Judge Marshall

delivered the Opinion of the Court.
This bill was filed, on the 11th day of September, 1837, by John Newdigate, who alleges that John Jacobs, being indebted to him in the sum of two hundred and twenty two dollars, executed his five notes therefor, viz: four for the sum of fifty dollars each, and one for twenty two dollars; on which he had obtained judgments before a justice of the peace, of the county of Mason, and that the executions thereon had been returned no property &c. by a constable of said county; and that in fact, Jacobs had no property which could be reached by said executions, nor any other property except a lot which he owned in the city of Maysville, on which the constable was not *18 authorised by law to levy for the satisfaction of the judgments; wherefore, he prays that said lot, or so much as may be necessary, may, by decree of the chancellor, be subjected to the payment of his debt, and that, in the mean time, Jacobs be enjoined from selling said lot &c.
He further alleges, that executions against said Jacobs, are in the hands of D. Wood, a deputy sheriff of Mason comity, which have been levied on said lot, but that it is worth greatly more than enough to satisfy them, and prays that, if the lot should not be found to be conveniently devisable, and the whole should be sold by said deputy, that he may be enjoined from paying over the excess, and that the same may be decreed to be applied to the satisfaction of the judgments set up in the bill, for which purpose, Wood, as well as Jacobs, is made a defendant.
A subpœna with injunction, according to the prayer of the bill, was executed on the deputy sheriff Wood, on the 11th of September, 1837, and on Jacobs, on the next day.
On the 16th of November, 1837, an amended bill was filed, in which the complainant states that, after he had obtained the injunction, &c. Lee & Rees had sued out executions on a judgment obtained by them, against Jacobs, at the August term of the Mason Circuit Court, and placed it in the hands of said deputy sheriff Wood, who had levied it upon the fractional part of the lot aforesaid, which remained unsold after satisfying the execution in his hands at the filing of the original bill, and that they would proceed to sell the same if not restrained &c.—He prays for a restraining order, makes Lee & Rees defendants, and asks for relief as in his original bill. An injunc was granted as prayed for in this amended bill.
Jacobs answers, admitting the allegations of the bill, and professing a willingness that the fractional part of the lot may be sold immediately, if the complainant is entitled to the relief prayed for by him.
Lee and Rees also answer, setting up their judgment and executions thereon, and the levy on the lot; deny that the filing of the bill gave the complainant any lien, or destroyed their right of levying on the lot and selling it, and charge that, from the facts apparent on the records *19 of the judgments set up by the complainant (and which were filed as part of his bill) there was fraud and collusion between him and Jacobs, to defeat other creditors.
The act to abolish imprisonment for debt, sec. 6, and the general ex’on law, sec. 37, authorize the circuit court, upon a return of nulla bona, by the proper officer, on an execution upon any judg’t—to subject the debtor’s interest in any estate, real, personal or mixed, to its satisfaction: hence, upon such return by a constable, on a justice’s execution (above £5,) the debtor’s real estate may be reached by bill in chancery and subjected to the payment of the debt.
The facts appearing on the records from the justice, are that the five notes executed by Jacobs to the complainant, bear date on different days, from the 21st to the 25th of June inclusive, and were made payable on different days before the first of July following; that on the first of July, warrants were issued, and judgments rendered, and executions issued on the same day; all of which were returned no property found, on the 11th of September following, on which day the bill was filed.
The record of the judgment of Lee and Rees against Jacobs, shows that, on a note bearing date the 10th of April 1837, for one hundred and forty one dollars and thirty cents, suit was commenced on the 31st day of July following; judgment rendered on the 14th of August, an execution sued out on the 13th of September, which was returned no property,’ and a second execution issued on the 27th of October, which was levied on the lot in question, and stayed by the injunction granted on the amended bill in this case.
On these facts, the Circuit Court dissolved the injunction and dismissed the bill, and the complainant seeks a reversal of the decree in this court.
We have no doubt that under the 6th section of the act of 1821 “to abolish imprisonment for debt” &c, Stat. Law, 302, and the 37th section of the general execution law of 1828, Stat. Law, 304, the circuit court of Mason county, setting as a court of chancery, had jurisdiction and authority to grant the relief prayed for in this case, and to take all the intermediate steps by which a court of equity may in any case enforce its jurisdiction. The statutes referred to do not exclude from the remedy which they furnish, a judgment rendered by a justice, but embrace all judgments and authorise the proper court of chancery, upon a return of an execution, such as is made in this case, “to subject to the satisfaction of any judgment, any interest, equitable or legal, in any estate, real personal or mixed, belonging to the defendant.”— *20 Whether, without the aid of these statutes the chancellor would, or would not have had power to subject the land of the debtor in satisfaction of a judgment of a justice, such power being given by the statutes, there is no difference in this respect between a judgment of a justice (over five pounds) and a judgment of a circuit court, except that the legal estate of the debtor in land being accessible by execution under the latter, and inaccessible in that mode, under the former judgment, the aid of the chancellor may, for that reason be necessary in the one case under circumstances that would not make it so in the other. In either case, the return upon an execution by the proper officer, that the debtor has no property by which it can be satisfied, is sufficient evidence of an obstruction of the legal remedy, to authorize the interposition of of the chancellor under the statute. Harlan &c. vs Barnes’ Adm’rs. 5 Dana, 222.
The filing of the bill, or at least the service of process upon it, gives the comp’t a lien on the property—by placing it under the control of the court; which will not suffer it to be withdrawn, so as to defeat the object of the bill, by any subsequent act or title. So, if the object is to subject land, and the land is sold under an execution that came to the officer’s hands after the bill had been filed, the purchaser must take it, as a lis pendens purchaser, subject to the decree.
The bill then, being properly filed for the subjection of the lot, or a part of it, to the satisfaction of the complainant’s judgments, and the whole matter being within the jurisdiction of the court, the question is, what was the effect of filing the bill; or as it may be stated in this case, what was the effect of serving, the subpœna, with the order of injunction or sequestration; all of which was done long before the defendants, Lee and Rees had any lien upon the property.
This question has been so fully discussed and so explicitly decided by this court, in the cases of Scott vs McMillan, 1 Littell 302, Scott vs Coleman, 5 Mon. 73, Watson vs Wilson, 2 Dana, 410, and Thoms vs Southard and Starr, 2 Dana, 480, that we deem it only necessary to say, in conformity with the decision in those cases, that we are entirely satisfied, that these facts constituted either a lien in favor of the complainant which could not be defeated by any subsequent act or title, so as to prevent the full and absolute operation upon the property, of any decree to which the complainant might be entitled independently of such subsequent act or title; or that they placed the property which was sought to be subjected so completely within the power of the court, that it could not be withdrawn, and the court should not permit it to be withdrawn *21 by any subsequent act or title, from its subjection for the purposes of such relief as the complainant was entitled to; which is the same thing in effect, as a lien in favor of the complainant.
The fact that, a debtor gave his creditor several notes at once, for one debt—enabling him to sue before a justice, and obtain speedy judgments, executions and returns—is not per se evidence of fraud, sufficient to affect the rights of the pl’tf as an attaching creditor.
This lien having attached before even the first execution issued on the judgment of Lee and Rees, and when they had no pretence of a lien, or other specific right in or against this property, the necessary consequence is, that the levy of their second execution having been made pendente lite, any right acquired thereby, if there were any, must be inferior and subordinate to the right of the complainant, to have the property subjected to the payment of his judgments; and that, although any sale which they might have made, under their levy, would have been subject to be defeated by the final decree in this case, even if they had not been made parties and expressly enjoined from further proceeding, there can be no objection to these steps which were entirely prudent and not unusual.
We need only add that the facts appearing upon the records of the complainant’s judgments, although they may evince a preference on the part of the debtor for this creditor, of which other creditors have no right to complain, are not per se and in the absence of all other proof on the subject, sufficient to raise the presumption, in opposition to the judgments and notes, that the debt claimed by the complainant, was not an actual and bona fide demand, or that there was any fraud between him and Jacobs. In these respects, the evidences of the validity and fairness of the complainant’s judgments, are at least as strong as those existing in the case of Harlan &c. vs Barnes’ Adm’r above cited, in which relief was granted.
Wherefore, the decree is reversed, at the costs of Lee and Rees, (the defendant Jacobs, having disclaimed all interest in the defence of the writ of error, and in the event;) and the cause is remanded, with directions to proceed, in the usual manner to subject to sale for the satisfaction of the complainant’s judgments, the fractional part of the lot referred to in the pleadings.