## Case No. 10,743.

### PARKER et al. v. MUGGRIDGE et al.

[2 Story, 334;[1] 5 Law Rep. 351.]

Circuit Court, D. New Hampshire. May Term, 1842.

EQUITABLE LIENS — EFFECT OF DECREE IN BANKRUPTCY—PARTNERSHIP ASSETS—PARTNERSHIP AND INDIVIDUAL DEBTS.

1. A and B of Massachusetts, instituted several suits at law against a factory company in New Hampshire and several citizens of that state, in which property was attached on the writs. Various agreements in writing were made by and between the parties, upon the conditions of which, the actions were continued from term to term, until they were defaulted at the August term of the court, 1841, and the entry of judgment thereon, pursuant to a written agreement filed in court at the said term, was made at the August term, 1842. Previously to this, several of the defendants had been decreed bankrupts on their own petition; and an injunction was obtained by their assignee, prohibiting the plaintiffs from levying their executions upon the property of the bankrupts. It was held, that the contracts entered into between the parties, constituted an equitable lien, which remained in force, notwithstanding the decree of bankruptcy.

[Cited in Re Cook, Case No. 3,152; Fiske v. Hunt, Id. 4,831; Re Bellows, Id. 1,278; Clarke v. Southwick, Id. 2,863; Lawrence v. Dana, Id. 8,136; Sixpenny Sav. Bank v. Estate of Stuyvesant Bank, Id. 12,919; Kimberling v. Hartly, 1 Fed. 574.]

[Cited in Ames v. Wentworth, 5 Metc. (Mass.) 296. Distinguished in Hubbard v. Hamilton Bank, 7 Metc. (Mass.) 344. Cited in Kittredge v. Warren, 14 N. H. 526; Talcott v. Dudley, 4 Scam. 435; Zollar v. Janvrin, 49 N. H. 117.]

2. Independently of the plaintiffs' claim as an equitable lien, they were entitled to have the injunction dissolved so far as respected the property owned by the bankrupts, and those of the

defendants who had not petitioned to be declared bankrupts.

[Cited in Re Schnepf, Case No. 12,471; Re Wallace, Id. 17,094.]

3. The general rule in bankruptcy is, that the property of partnerships is first to be applied to the discharge of the partnership debts, and the surplus only is to be applied to the individual debts of any one partner. But if it be necessary, in order to make a final settlement of all claims, the court may take upon itself the administration, as well of the partnership estate as of the estate of the bankrupt partner.

[Cited in Re Wallace, Case No. 17,094; Amsinck v. Bean, 22 Wall. (89 U. S.) 403; Wilkins v. Davis, Case No. 17,664.]

[Cited in Talcott v. Dudley, 4 Scam. 437.]

4. Where one partner becomes bankrupt, his assignee can take that portion of the partnership assets only, which would belong to the bankrupt, after payment of all the partnership debts, and the solvent partner has a lien upon the partnership assets for all the partnership debts, and, also, for his own share thereof, before the separate creditors of the bankrupt can come in and take any thing.

[Cited in Forsaith v. Merritt, Case No. 4,946; Mitchell v. Winslow, Id. 9,673; Re Baker, Id. 762; Wilkins v. Davis, Id. 17,664.]

[Cited in Kittredge v. Warren, 14 N. H. 532; Perkins v. Gibson, 51 Miss. 699.]

The following bill in equity, or summary proceeding, was filed in the district court of New Hampshire by the plaintiffs.

"To the Honorable Judge of the District Court of the United States for the District of New Hampshire:

"Humbly complaining, show unto your honor, Isaac Parker and Abraham W. Blanchard, both of Boston, in the county of Suffolk, and state of Massachusetts, merchants, late partners in trade, under the firm of Parker and Blanchard, that on and prior to the seventeenth day of May, A. D. 1837, the said Parker and Blanchard held certain notes, and accounts, and other just claims against the Avery Factory Company, a corporation duly established by law, at Meredith, in the county of Belknap, in said district, Josiah Crosby, physician, Abraham Brigham, Alpha Stevens, John Philbrick, and Salmon Stevens, cotton manufacturers, all of Meredith, in the county of Belknap, in said state of New Hampshire, and citizens of said state, and against Charles Parker, Richard Fisher, and Benning Muggridge, also of Meredith, in said county and state, and citizens of said state; and that the said Parker and Blanchard on that day sued out of the court of common pleas for the county of Strafford, three writs of attachment, one against the said Avery Factory, the said Josiah, Abraham, Richard, Benning, and Charles, one against the said Avery Factory Company, the said Josiah, and Abraham, Alpha, John, and Salmon, and another against the said Avery Factory Company, and upon the said writs attached certain real and personal property of said Avery Factory Company, and certain other machinery and personal property owned by said Avery Factory, and certain of their said other debtors, and certain real and personal property owned severally by their said debtors, and cer-

[1] [Reported by William W. Story, Esq.]

tain other property owned jointly by several but not by all their said debtors; and at a term of the court of common pleas, holden at Gilford in and for the county of Belknap, on the first Tuesday of August, A. D. 1842, your said orators recovered judgment in said first mentioned action for eight thousand five hundred and sixty-eight dollars and fifty three cents debt, and thirty-five dollars and eighty-eight cents costs of suit, and in said action secondly above mentioned, for ten hundred and sixty-three dollars damages, and twenty-seven dollars and eighty-three cents costs of suit, and in said action against said Avery Factory Company alone, for eight hundred and fifty dollars and thirty-five cents debt, and seventeen dollars and seventy-nine cents costs of suit, and the said Parker and Blanchard, and one Marshal P. Wilder, having other claims justly due them from said Avery Factory Company, Charles Parker, Benning Muggridge, Josiah Crosby, and Abraham Brigham, on the ———— day of May, A. D. 1842, sued out a writ of attachment for the recovery thereof, and thereupon attached real and personal estate of said last named debtors, and certain other real and personal estate owned severally by some of said debtors, and jointly by several of said debtors, and at the term of the said court last aforesaid, recovered judgment in said action for six thousand one hundred and sixty-two dollars and twenty-seven cents debt, and twelve dollars and forty-nine cents costs of suit.

"And your orators further show, that after said attachments in said first mentioned three actions, on the tenth day of June, A. D. 1837, they entered into a written contract with said Avery Factory Company, said Crosby, Brigham, Furber, Charles Parker, and Muggridge, and on the fifteenth day of June, A. D. 1838, the said Parker, Blanchard, and Wilder, entered into another written contract with said Avery Factory Company, Crosby, Brigham, Charles Parker, Muggridge, Alpha Stevens, and Philbrick, and on the twenty-sixth day of July, 1839, into another written contract with said Avery Factory Company, Crosby, Brigham, Charles Parker, and Muggridge, and on the twenty-eighth day of June, 1840, into another written contract with the last mentioned parties, and on the twenty-eighth day of July, 1841, into another written contract with the persons last mentioned, with the exception of said Brigham, and that in and by all said contracts, it was provided and agreed, that said Parker and Blanchard should cause to be furnished to the said other parties to said contracts, certain quantities of cotton, to be manufactured into cotton cloth. upon certain terms and conditions in said contracts set forth; that the proceeds of said cloth should be applied in certain proportions, in said contracts specified, to the payment of said Parker and Blanchard for said cotton by them to be furnished, and to the payment of the said claims, on which the three ac-

tions first above mentioned were founded. And in and by said contracts executed in 1837, 1838, and 1839, it was agreed, upon the considerations therein stated, that if no mortgagees of the mill of said Avery Factory Company should take possession, the aforesaid three first mentioned actions should be continued without cost, till the expiration of said contracts respectively, and in and by said contract, executed in 1840, it was agreed, that if possession should not be taken by the mortgagees of the mill and other property attached in said suits, and if no other attaching creditors should object thereto, the said suits should be continued without cost until the first of August, A. D. 1841; but if possession should be taken by any mortgagee of said mill or other property attached in said suit, or if any attaching creditor should object to a continuance of the same, so that the same could not be continued, that judgment should be rendered in the said suits against the said parties of the second part to said contract for nine thousand two hundred and ninety-two dollars and forty-five cents with interest thereon from the first day of July, then next, until the rendition of said judgment; and in and by said contract of July 28th, 1841, it was agreed, that the said three actions should be defaulted at the then next term of the court of common pleas for said county of Belknap, and if possession of said mill or property attached should not be taken by any mortgagee, and if no other attaching creditor should object thereto, the three said suits should be continued without costs until the August term of said court, 1842. But if possession should be taken as aforesaid, or if any attaching creditor should object to said continuance, so that the same could not be continued, that judgment shall be rendered in the said suits against said Avery Factory Company, and said two suits against said Avery Factory and others, for the amounts for which judgments were subsequently entered against them at the August term of said court, A. D. 1842, as hereinbefore set forth, according to agreements by them entered into in court for that purpose. And that the said parties by their agreements in writings, signed by their respective counsel in court, and filed in said court at said August term, A. D. 1841, agreed, that judgments should be entered in said actions, at such term thereof as said plaintiffs should elect, for the sums aforesaid; and your orators further show, that at said last mentioned term of said court, they elected to take judgment for the sums aforesaid.

"And the said Parker and Blanchard further show, that at the time of executing said written contracts, it was further agreed and understood between them and their said debtors, that while the said contracts remained in force, and the said actions were continued for judgment as aforesaid, the said actions and attachments should stand and remain (the defendants therein having been defaulted, in

pursuance of said contracts, at August term of said court, A. D. 1841), as security for the plaintiffs' said claims, upon which the said three actions were founded; and by virtue of the said written contracts, and of the said agreement and understanding of said parties, the said Parker and Blanchard had a lien upon the said property for their said claims, which lien is not, as they submit to said court, destroyed, or at all affected by the act of congress passed August nineteenth, A. D. 1841, or by any thing done by any of the said parties to said contracts by virtue of said act. That said Josiah Crosby, Abraham Brigham, Benning Muggridge, Salmon Stevens, and Philbrick, were, as your said orators have been informed and believe, on the seventeenth day of August, A. D. 1842, by this honorable court declared bankrupts, in pursuance of said act of congress, and that one George L. Sibley, of said Meredith, in said state, and a citizen of said state, who was then appointed assignee of said Crosby, Brigham, and Muggridge, has applied to this honorable court, and upon certain representations unknown to said orators, has obtained a writ of injunction, prohibiting your said orators from levying the said executions upon the property of said Crosby, Brigham, and Muggridge. That on the twenty-fifth day of September, A. D. 1840, and on the twenty-eighth day of July, 1841, and on other days, the defendants in all said executions, pledged and delivered to said orators large quantities of machinery, goods, and personal property, which has ever since remained in their possession, and they have long since given notice to the pledgors of their intention to sell the same, if not redeemed, and that the said pledgors have neglected to redeem the same; and that in and by said injunction, said orators are not only restrained from levying their said executions upon said property, upon which they have a lien by virtue of said attachments, in connection with said agreements, and upon the property owned by the said Avery Factory, and others, who are, by virtue of said agreements, constituted a copartnership, which copartnership has not been declared bankrupt; but also from levying their executions upon the real estate, attached in said suits, and upon which their lien and claim, by virtue of said attachment, will expire in thirty days from the time of the rendition of said judgment, and from selling said property pledged to them as aforesaid.

"Wherefore the said orators pray, that the said defendants in said executions may be required to make full, true, and perfect answers to all the matters hereinbefore charged; that the said injunction may be dissolved, and that the lien of said orators upon the said property attached, may, according to the said agreements, be decreed and established as an equitable lien; and that they may have such other and further relief, as the circumstances of their case may require, and as to your honor may seem meet. And that writs of subpœna may issue from said court to the said defendants in said executions before named, commanding them upon a certain day, and under a certain penalty therein to be inserted, to appear therein, and do, and receive, what the said court may order."

When the cause came on to be heard, the following order was passed by the district judge:

"On the hearing of the motion of the plaintiffs in the foregoing bill to dissolve the injunction granted upon the application of George L. Sibley, assignee of said Muggridge and others, the following questions arose, which were adjourned for further hearing and decision into the circuit court of the United States for said district, viz.: (1) Do the contracts, stated in the plaintiffs' bill, in connection with their attachments, as entered into by them with the Avery Factory Company, said Muggridge and others, constitute an equitable lien which remains in force, notwithstanding the decrees of bankruptcy against said Muggridge and others? (2) Independently of said plaintiffs' claim of lien, should not the injunction be dissolved, so far as it respects the property owned by said bankrupts, and by their copartners, the Avery Factory Company and Charles Parker, who have not petitioned to be declared bankrupts? (3) It was admitted at the hearing, that the actions of said Parker and Blanchard, in which their judgments were obtained, were disposed of at the session of the court of common pleas, held on the first Tuesday of August, A. D. 1842, on the last day of said term, which was the 19th day of said August, but no special entry of judgment, in any other than the usual form, was ordered or made. Said Muggridge, Crosby and Brigham were decreed bankrupts on the 17th day of August, A. D. 1842.

"The agreement in relation to the amount of judgment and the time, when they should be rendered in said Parker and Blanchard's said actions, was executed July 24th, 1840. A further agreement on the same subject was made July 28th, A. D. 1841, and was carried into effect by the entry of a default in said actions at August term, 1841, and the entry of judgment therein (pursuant to written agreements filed in court, August term, 1841), was made at August term, 1842. For the particular terms of said contracts, reference is to be had to the statement thereof in said plaintiffs' bill."

The cause now came on, and was argued by B. R. Curtis (with whom was Mr. Fletcher), for plaintiffs.

Mr. Hazelton, of New Hampshire, for the assignee, argued the cause briefly on that side. His argument was to this effect: We supposed, that the case was disposed of by the Case of Foster [Case No. 4,960], and that the attachment was dissolved by the decree in bankruptcy, and the injunction properly

issued. The contracts gave the plaintiffs no other rights than those given under the attachment laws of New Hampshire. The rights under an attachment in New Hampshire are conditional and contingent; and here, according to the doctrine in Foster's Case, the attachment is, in effect, qualified, or superseded by the proceedings in bankruptcy. We do not admit, that the plaintiffs under these contracts had any fixed rights. They were not designed to operate as a security or to confer a lien. The plaintiffs had no possession to support or found a lien. The savings in the second section of the bankrupt act of 1841, c. 9, save only such liens, mortgages, and other securities as are valid by the state laws, and not inconsistent with the bankrupt act. No lien in cases of this sort is created by the laws of New Hampshire, although it is not prohibited. Under the laws of New Hampshire, if the debtor dies, and his estate is insolvent, the attachment upon mesne process by the creditor is dissolved. That, by parity of reasoning, will apply here.

STORY, Circuit Justice. I do not wish to trouble Mr. Fletcher to reply, because I entertain no doubt whatsoever in this case. It is clear to my mind, that the contracts in this case were good and valid, and founded in a valuable consideration, and that the object of them was to give a perfect security to the plaintiffs for their debts, so far as the property attached could go, and these attachments could by law be made available. These contracts created a clear equitable lien upon the property attached, which a court of equity would be bound to enforce, and even a court of law ought to enforce, as far as it could properly do so, in the administration of justice between the parties in the suit. It is by no means necessary in the view of a court of equity, that the contracts should contain an express stipulation, that the attachments shall stand as a security for the plaintiffs. It is sufficient, if it clearly appear, that such were the obvious intent and objects; and unless that construction should be given, the plaintiffs would have parted with valuable rights without any correspondent benefits. Possession is by no means necessary to create, or to support an equitable lien. On the contrary, in equity and admiralty, liens exist altogether independent of possession; as, for example, the lien of a vendor for the unpaid purchase money, where he has conveyed the land, the lien of a bottomry holder, and the lien of a seaman on the ship for his wages. But here the possession of the personal property under attachment, although in the sheriff, was clearly for the benefit of the plaintiffs; and the attachment of the real estate created a lien thereon by mere operation of law, wholly independent of any possession by the officer.

The bankrupt act of 1841, c. 9, § 2 [5 Stat. 440], contains an express saving of all liens, mortgages, or other securities on the property, real or personal, of the bankrupt; and equitable liens, mortgages and securities, are as much within the act as legal liens, unless there be some prohibition in the state laws, which renders them invalid; and there is no pretence to say, that any such law exists in New Hampshire. Indeed, if there had been no such saving in the act, the liens, mortgages, and other securities, within the purview of the saving, would have been saved, by mere operation of law, from the natural intendment of the statute, which did not mean to disturb existing vested rights and interests in property. The case Ex parte Foster [supra], differs in all its main elements from the present. There, the attachment was merely in invitum, without the consent of the debtor. Here, the attachments, however originally made, were subsequently continued and intended to be perfected as securities by the contract of the debtors. In Foster's Case, there was no admitted debt due by the debtor, nor any agreement as to not contesting it. In the present case, the defendants have, under their own agreement and contract, been defrauded, the amount of the debts ascertained, and the attachments agreed to be held as security therefor. In Foster's Case, the bankrupt, if he obtained his discharge, had a right to plead it in bar to the suit. In the present case, the defendants have no day to plead any such defence; they have been, by their own consent, defaulted, and the amount established; and they are therefore estopped to say, that they have any defence or bar to the judgment. In truth, therefore, Foster's Case has no similarity with the present. It stands entirely upon the general and naked right of a creditor to make an attachment, and proceed in his suit against his debtor, without any equity acquired by any act of the defendant to give him new rights in the suit; or to take away any rights of the defendant.

I can have no doubt, that the contracts in the case at bar created a trust, in the sense of a court of equity, in the property attached in favor of the plaintiffs, which the defendants might be compelled to perfect and perform, according to its just interpretation. It is no objection, that the trust or security thus obtained is under legal process, or by operation of law. Securities of that sort are very frequent both in England and America, and are deemed the most certain and fixed of any. Thus, a judgment in England, and in many of the states of America, gives a permanent lien upon all the lands of the judgment debtor, and is, on that account, resorted to as a favorite security. It is true, that an attachment by our laws has not the same permanence, but it is limited to a short period after the judgment, within which the plaintiff must take the attached property in execution, or he will lose his lien. But then, in such a case, if he loses his attachment, it is his own

fault and laches. Now, in the case at bar, the plaintiffs do not ask the court to enforce their attachment or equitable lien; but they only ask the court to leave them, free from the injunction, to pursue their legal and equitable rights under their judgment and execution. It appears to me plain, that they are entitled to it. They have an equitable lien and a superior title to the property over the assignee and the general creditors; and the assignee must take the property of the bankrupts for the general creditors, subject to this lien and superior title. The case of Dale v. Smithwick, 2 Vern. 151, is strongly in point, as to the nature and obligation of a contract of this sort to create an equitable lien or trust in property. In Legard v. Hodges, 1 Ves. Jr. 477, Lord Thurlow said, that it was an universal maxim, that, wherever persons agree concerning a particular subject, in a court of equity, as against the party himself, and any claiming under him, voluntarily or with notice, it raises a trust. See 2 Story, Eq. Jur. §§ 1230, 1231; Collyer v. Fallon, 1 Turn. & R. 469, 475, 476. The cases of Ex parte Copeland, 3 Deac. & C. 199, and Ex parte Prescott, 1 Mont. & A. 316, and Ex parte Flower, 2 Mont. & A. 224, establish, that the same rule prevails in bankruptcy; and that the property will be followed and affected with the trust in the hands of the assignees, in the same manner and to the same extent, as it would be in the hands of the bankrupt. But if no such case ever existed, I should have no doubt, upon principle, that such ought to be the result. But there are many cases, which stand upon analogous grounds. See 2 Story, Eq. Jur. §§ 1230, 1231, 1232. We all know, that in bankruptcy, the assignee takes only such rights, as the bankrupt himself had, and is subject to the like equities. See 1 Cooke, Bankr. Law (4th Ed. 1799) pp. 267–270, c. 7, § 2; 2 Story, Eq. Jur. § 1411; 1 Deac. Bankr. (Ed. 1827) pp. 320, 321, c. 10, § 3. There is a close analogy, although perhaps the same principles may not apply throughout, between cases like that before the court, arising in bankruptcy, and cases of the administration of the assets of a deceased testator or intestate, by courts of equity, in the ordinary exercise of their jurisdiction, upon a creditor's bill for the benefit of all the creditors. Courts of equity in such cases always exercise a sound discretion as to restraining any particular creditor from pursuing and enforcing his legal rights under his proceedings and judgment at law, and will not interfere in such a manner as to displace any of his just rights and equities. That is sufficiently apparent from the case of Drewry v. Thacker, 3 Swanst. 529, 546, and especially from the elaborate judgment of Lord Langdale in Lee v. Park, 1 Keen, 714. It appears to me. that the district courts, sitting in bankruptcy, should uphold the like doctrine, and should exercise a like discretion in not restraining the rights of judgment creditors, who are proceeding to enforce their judgment and executions, not merely upon their ordinary rights as judgment creditors, but upon the footing of equitable rights and liens acquired under contract; for, in such cases, they have a superior equity to that of the general creditors. My opinion, therefore, is that in the present case, the plaintiffs have, in virtue of their contract, a superior equity, which ought to be protected by the courts sitting in bankruptcy; and that the injunction, granted in this case, ought to be dissolved; and this will constitute an affirmative answer to the first question propounded in this case.

The second question may be disposed of in a few words. The general rule in bankruptcy is, that in cases of partnership, where one partner becomes bankrupt, his assignee can take only that portion of the partnership assets, which would belong to the bankrupt, after payment of all the partnership debts; and that the solvent partners have a lien upon the partnership assets for all the partnership debts, and also for their own shares thereof, before the separate creditors of the bankrupt partner can come in and take any thing. See Story, Partn. §§ 375, 376. It is true, that in such cases, it may often, from the necessity of the case, and for the purpose of ascertaining the partnership assets and debts, and adjusting and settling the same, and making a final settlement and distribution of the surplus, be indispensable, that the district court, as a court of equity, should take into its own hands the exclusive management and administration of all the partnership assets, and inhibit the other partners from intermeddling therewith. But this it will do with caution, and solely for the purposes before stated. And so far from thereby displacing any of the rights, liens, and equities of the other partners, it studiously seeks to maintain and protect them. Now, in the present case, under its peculiar circumstances, there is no reason whatever for the interference of the district court by way of injunction, or otherwise, to administer the property in controversy. On the contrary, by refusing or dissolving the injunction, it accomplishes the very ends designed by the contracts between all the parties, and allows the partnership property to be applied to the discharge of the partnership debts according to its just and original destination. To the second question, therefore, an affirmative answer ought also to be given.

I shall direct a certificate to be sent to the district court accordingly.

The certificate was as follows:

"Circuit Court of the United States, New Hampshire District. In Bankruptcy. September 12, 1842. Isaac Parker et al., Plaintiffs in Equity, v. Benning Muggridge et al.

"In answer to the questions adjourned into this court by the district court of New Hamp-

shire, in bankruptcy, it is ordered that the following answers be sent to that court as the opinion of this court. First. That the contracts stated in the plaintiffs' bill, in connection with their attachments, as entered into by them with the Avery Factory Company, the said Muggridge, and others, constituted an equitable lien, which remains in force, notwithstanding the decrees of bankruptcy against the said Muggridge and others. Second. Independently of the said plaintiffs' claim as an equitable lien, which, of itself, constitutes a sufficient ground for the dissolution of the injunction granted in this case, the plaintiffs would be entitled to have the same injunction dissolved, so far as respects the property owned by the said bankrupts, and by their copartners, the Avery Factory Company and Charles Parker, who have not petitioned to be declared bankrupts, and indeed do not appear to be bankrupts. The general rule in all cases of this sort is, that the property of the partnership is first to be applied to the discharge of the partnership debts, and the surplus only ought to be and can be applied to the individual debts of any one partner. It may however occur, that in the bankruptcy of one partner, it may be necessary for the court in bankruptcy to take upon itself the administration as well of the partnership estate as of the estate of the bankrupt partner, in order to have a final settlement of all the claims. But no such question is here presented, and it is here alluded to only for the purpose of excluding any different inference from being drawn from the answer to the second question.                    Joseph Story,
"Associate Justice of the Supreme Court of the United States."