JAMES HARTSHORN & al. in Eq., versus JACOB F. EAMES & al.

MEM. — Pending this suit, the judgment, named in the bill, was assigned by the plaintiffs. The assignee was allowed, after the arguments to come in, upon terms, as the party plaintiff. He, however, introduced no new evidence or argument.

The court has jurisdiction, in equity, of a bill, brought by a judgment creditor, which charges that the judgment debtor, one of the defendants, had fraudulently, and without a valuable consideration, transferred his property to the other, under an agreed purpose between them to defraud the plaintiff.

In such a case, the plaintiff may find it indispensable to rely upon disclosures, to be made in the defendant's answers, and therefore the bill is not demurrable.

Although one of the defendants, when purchasing the property, was a bona fide creditor of the other defendant, from whom he purchased it, yet, if his real object was, not to obtain payment of his debt, but merely to give the colorable appearance of a sale, when no real sale was intended, the purchase would be fraudulent as against the creditors of the vendor.

If personal property has been conveyed for the purpose, concurred in by the vendee, of deterring creditors of the vendor from attaching it, such conveyance is a fraud, the remedy for which may be sought in equity.

Where real estate, to which the fraudulent debtor had no other than an equitable title, is transferred by his procurement to another, cognizant of the design to secure it from creditors, it cannot be levied by a creditor upon execution. But, if a creditor's execution is returned nulla bona, the institution, by him, of a suit in equity against the fraudulent grantee, gives him a lien upon the avails of it.

Where a fraudulent transfer of property is alleged in a bill to have taken place at a particular time, it is unnecessary to aver that the fraud continued and existed at the time of filing the bill; but if the property did, subsequently to the fraud, go into the hands of bona fide creditors, that must appear in defence.

Whether a fraud can in that way be so purged, as to deprive a creditor of his remedy; quære.

BILL IN EQUITY, to which a demurrer was filed and answers were.made. The case was heard on the demurrer, answers and proofs.

The facts, so far as necessary to an understanding of the case, appear in the arguments and opinion.

*W. G. Crosby*, for plaintiffs.

*Heath*, for defendants.

. This bill is dated January 31, 1845, and alleges two matters of fraud, the one pertaining to personal property of the value of $300, the other to real property of like value, and both alleged to have been sold fraudulently by the judgment debtor on June 26, 1843, the said debtor continuing the bene-. ficial owner and in possession of the same.

The personal property is specified, and the charge is, that the judgment debtor conveyed and transferred it to the other defendant without consideration, the judgment debtor retaining the possession. In the bill, no transfer, such as to give a colorable title by law, is alleged. The property never changed possession, nor is there any allegation of delivery. Possession is the usual evidence of ownership, of which the debtor never divested himself.

The judgment creditor has no other interest than to satisfy his execution. Suppose this personal property was the only subject of complaint in the bill, and the debtor never had abandoned the possession, nor given a mortgage, would the fact that he had made a sham sale, give the court jurisdiction? Does the charge of fraud, without putting the property beyond the reach of the officer or creditor, give the court equity powers as to personal property? A party must be put into a more hopeless case, before it can be said he has no adequate remedy at law. The property is all the creditor has a right to ask for, and that he has a right to take.

Not only was there no change of possession, the common and lawful evidence of ownership, but no legal impediment is charged to exist. This court is only to give a man his legal rights, not to obtain a greater benefit than the law has given him. *Neale* v. *Duke of Marlborough*, 14 Eng. C. R. 417.

The bill alleging no fraudulent mortgage or change of possession, a decree of this court cannot benefit the plaintiffs, more than their remedy at law would.

Again, it does not appear from the bill, that this property was in existence, or that the fraudulent grantee had, or was deriving any benefit, or pretending to hold it, *at the time of commencing this suit.* There is no such allegation. For

aught appears, every dollar of it has rightfully gone to pay other creditors, or may have been seized by them, and, either by levy or sale, been taken from both of the defendants.

The court does not derive its equity jurisdiction, from the fact that a fraud was once perpetrated; it can only interfere, where there is an actual locking up of property, at the time of the commencement of the process.

Besides, in this case, according to the allegation of the bill, the plaintiffs have a remedy at law under ch. 148, § 34, R. S.

As to the real property described in the bill, that can not come under equity proceedings, for the plaintiffs allege no interest in it, by way of *lien.* That property is subject to sale or levy, and consequently there must be a *lien* thereon, before this process can be sustained. This principle is recognized in *Beck* v. *Burdit,* 9 Cowen, 732.

A lien upon the estate, from which the fraudulent conveyance is sought to be removed, must be shown to exist at the time of the commencement of the bill. *Dodge* v. *Griswold,* 8 N. H. 428.

If aid of a court of equity is sought as to real estate, the creditor must show a judgment creating a lien upon the estate. *Reed* v. *Cross,* 14 Maine, 261.

The same principle is asserted in 15 Maine, 85, where the creditor had a deed from the very man, who had fraudulently conveyed away the land, and this deed was held to be equivalent to a levy.

The return of *nulla bona,* is not the true foundation of equity proceedings, but only evidence that the remedy at law is exhausted. But if the plaintiff, in his bill, sets forth facts contradicting his return, it then amounts to nothing. The law, that it is necessary for the creditor to have a lien, is well settled. What that lien, in our State, is, is not so well established.

In New York and England, the sources of most of the cases in equity, the obtaining a judgment and execution, and *elegit,* effect a lien upon the property of the debtor; but in New Hampshire, the doctrine is doubted.

But there is another objection, that the bill does not allege that the conveyance was ever *recorded*, or that it was a legal conveyance. To prevent or hinder an attaching creditor, the fraudulent deed must be recorded, and herein the plaintiffs have set forth no obstructions whatever, to hinder them from satisfying their judgment.

There is another objection to this bill, disclosed by the testimony, which is, that proper party plaintiffs are wanting. It appears, that the judgment, which is in the name of the plaintiffs, has been by them assigned, and the assignees should be parties to the proceedings.

WHITMAN, C. J. — The plaintiffs in their bill allege, that they recovered judgment against the defendant, Jacob F. Eames, for $195,42, debt, and $10,72 costs; and that execution had been issued thereon, which had been returned unsatisfied, for want of property to be found, appearing to be owned by him; and that, on the 26th of June, 1843, after the above sum of $195,42 had been awarded to them, but before judgment had been entered up upon said award, the said Jacob for the purpose of defrauding the plaintiffs of their said demand, and without any valuable consideration therefor, conveyed to the other defendant, who was his father, all his real and personal estate, amounting in value to six or eight hundred dollars; and that the defendants in so doing confederated together for the purpose above mentioned; and it is claimed that, by reason thereof, they should both be held to be responsible to the plaintiffs for the amount of their demand, for which judgment had been so obtained.

To these allegations the defendants, in the first instance, interpose a demurrer, upon the alleged ground, that the plaintiffs have exhibited no good cause in equity; and, secondly, that the plaintiffs have an adequate and complete remedy at law. But it would seem to be too clear at this day to need argument to show, that the demurrer is not well taken. The allegation of fraud brings the case within one of the specifications in the statute, conferring equity jurisdiction upon this

court; and, in such case, the plaintiff may find it indispensable to rely upon matter to be disclosed by the defendants, to substantiate their charges. Besides; "cases of fraud are, least of all, those in which the complete exercise of the jurisdiction of a court of equity, in granting relief, ought to be questioned or controlled, since, in addition to all other reasons, fraud constitutes the most ancient foundation of its power; and it sifts the conscience of the party, not only by his own answer, under oath, but, by subjecting it to the severe scrutiny of comparison of other competent testimony." Story on Equity, § 68. Hence the remedy at law could not be adequate and complete.

But, as to the matter in equity, if the allegations of the plaintiffs are substantiated by their proof in the case, there would seem to be no reason why they should not prevail. They would, in such case, appear to have sustained an injury; and by the misconduct of the defendants; and such as would entitle them to relief. The demurrer, therefore, must be overruled.

The defendants, under a rule of this court, that a demurrer and answer shall not be considered as overruling each other, have, also, answered fully to the merits of the bill; and have denied the fraud set up therein; but admit the existence of the plaintiff's debt; and that conveyances of Jacob's property had been made to Samuel, at the time alleged, averring that the sale was *bona fide*, and for a valuable and adequate consideration, viz. the prior indebtment, of long standing, of the said Jacob to the said Samuel, to the amount of the value of the property transferred, the evidence of which indebtment was thereupon canceled.

Here, then, the parties are at issue, the one alleging that the transfer was not for a valuable consideration, and not *bona fide*, and the other that it was. And evidence has been taken, at considerable length, pro and con, in reference to such issue.

It is not questioned, but that the transfer from Jacob to Samuel, was of all the attachable property, which Jacob had visibly, leaving the debt to the plaintiffs unprovided for.

Jacob, therefore, may well be believed to have been insolvent. The property, though transferred in part, absolutely, and in part by way of mortgage, is abundantly proved to have remained, as before, in Jacob's possession and occupation; and the vendee was the father of the vendor. Hence there were the *indicia* of a fraudulent sale; such as, at the suit of the plaintiffs, who were *bona fide* creditors of Jacob, would make it necessary for the vendee to show the payment of an adequate consideration for the purchase, and that the transaction was in good faith. Without both, the sale must be deemed fraudulent.

A distinction exists, however, between a sale made to one in payment of a precedent debt, and to one, who might, at the time of sale, pay an adequate consideration therefor. In the latter case, if done with an understanding between the parties, that it was to enable the vendor to defeat the claims of his creditors, it would, against them, be void, but not so in the former. A debtor has a right to prefer one creditor to another; and may make a valid transfer to such creditor, of property fairly sufficient to pay him, although it may be *known to such creditor, that one object in view by the debtor was to avoid the payment of the debt of another creditor.* *Holbird* v. *Anderson*, 5 T. R. 235; *Pickstock* v. *Lyster*, 3 M. & Selw. 371.

In this case both defendants, in their answers, aver, that the sale in question was but an adequate payment of a precedent debt; and they aver further, that it was done in good faith; which must mean, that it was not colorably done, merely to give the semblance of a sale, when none in fact was intended. The answers, being responsive to the charges contained in the bill, must be taken to be true, unless evidence is to be found in the case, overcoming their weight, when taken in connection with evidence in corroboration of the same.

We must now examine the evidence, adduced on the part of the plaintiffs, and determine whether it can fairly be deemed sufficient for the purpose. It must ordinarily be expected to be circumstantial. If any thing improper in a negotiation

be intended, it will seldom, if ever, be avowed; but every thing, of a tendency to render it apparent, will be studiously concealed; and circumstantial, or what perhaps with more propriety may be called presumptive evidence, may be, and often is, very cogent, and even conclusive. There are, in this case, quite a number of circumstances, well authenticated, which have heretofore been allowed great weight in determining a sale to be fraudulent, as against the rights of creditors.

Although the defendant, Samuel Eames, should be deemed to have been a *bona fide* creditor, yet, if the real object of his purchase was not payment of his debt, but merely to give a colorable appearance of a sale, when in fact none was intended, it would be fraudulent, as against the creditors of Jacob. *Twine's case*, 3 Coke, 80, was one of preference of one creditor for another; and held void, because the conveyance was of all the property the debtor had, liable to seizure for debt, and was made, pending a suit against him by the creditor, seeking to avoid the sale, and because there was manifested a trust between the parties; the donor still continuing in possession, and using the goods as his own; and in that case it was said to be a circumstance of a similar tendency, that the conveyance recited, that the gift was made honestly, truly and *bona fide;* such clause creating suspicion, it being unusual, and indicating, that the donor was aware that it might be deemed otherwise. This case has been referred to, times almost without number, as containing a notice of the badges, affording a clear presumption of a fraudulent intent, in regard to other creditors. In the case at bar, all these *indicia* may be said to concur. The conveyance was confessedly a sweeping one, of all the debtor's attachable property; it was made while a reference was pending between the debtor and the plaintiffs, when he had reason to presume that an award had been made, and that it might be against him. The evidence shows, that he was allowed to use and deal with the property, after the conveyance, the same as before; and that he sold a great proportion of the personal property; and there is no

evidence that the vendee ever interfered to prevent it, or that he ever received or exacted any portion of the proceeds of what was sold; nor that he has, to this day, given himself the least concern with the management and disposition of the property. And as to what transpired at the time of the sale, it was not seemingly, in accordance, so far as we can gather from the evidence, with the prior and subsequent transactions between the parties. There is no indication of great formality, in transacting business between them, except on the occasion in question. On that occasion great precision was resorted to. An accurate calculation and valuation was gone into; and the claim of the grantee was made to overbalance the valuation, as one witness says, three or thirteen dollars, which he consented to relinquish or disregard; and he took his conveyance, in the form of a mortgage, professedly to secure, it would seem, the precise amount of the value of the property mortgaged; and although the sum secured was to bear interest, the mortgager was to have the use of it for at least one year; and in fact, so far as appears, has kept it ever since. After being so precise in making the sum due to be exactly in conformity to that of the valuation, no care is taken to prevent the interest from running and accumulating beyond the valuation, to any amount. This is not what should have been expected, in a *bona fide* transaction; but is much more like what should be looked for, when something more resembling a farce was in view.

But we have in this case, not only these recognized badges of fraud, but the often expressed declarations of Jacob, showing his determination, by the conveyance in question, and other subsequent conveyances, to avoid the payment of the plaintiff's debt; and Samuel's statements also to the same effect; and also that the design was to secure the property, not for his own use, but for the use of Jacob. He said to the witness, James Tyler, who bought of Jacob one yoke of the oxen, contained in the conveyance, upon inquiry of him, whether there would be any trouble about it, that there would not, if Jacob got his pay; and added that "it was not

worth while to say much about business done in that way." And in the spring of 1844, in conversation with A. T. Nickerson, about a debt of $180,00 due to him from Jacob, Samuel said to him, that with Jacob's consent, he would convey to him all the property, which Jacob had conveyed to him, and that, in making the conveyance to him, Jacob had no intention to prevent him, Nickerson, from getting his pay ; that they did not consider the debt to the plaintiffs to be just. The inference, from these two conversations, would seem to be none other than that the design of the transfer to Samuel was merely to prevent the plaintiffs from securing their demand, without depriving Jacob of the use and disposition of the property conveyed, at his pleasure.

Again ; in May, 1844, Jacob became the owner of another yoke of oxen, and immediately transferred them to Samuel ; and in October following, he became the owner of a horse, two wagons and a harness, which he also transferred in the form of a mortgage to Samuel. The object of these transfers is unexplained, and cannot well be regarded as otherwise than in furtherance of the main design in reference to the plaintiffs. And, moreover, it appears that, at the time the property in the bill and answers was transferred, a deed was made, reciting a consideration as received of two hundred dollars by Jacob of Samuel ; and transferring from the former to the latter a parcel of real estate. This does not appear to have been done in payment of any debt to Samuel. His alleged debt was paid, as the answers pretend, by the other property. This conveyance is not alluded to in the bill, but is properly introduced by way of leading to an understanding of the true nature of the whole negotiation. Why was not this sum of two hundred dollars allowed to reduce the amount for which the mortgage was taken of the personal property ? It would seem that such should have been the case, unless the whole affair was designed to be merely fictitious.

Quite a number of other circumstances, pointed out in the proofs, by the counsel for the plaintiffs, may well be regarded

as tending in a greater or less degree to the conclusion indicated by those already enumerated. And on the whole we are brought to the conclusion, notwithstanding the averments in the answers to the contrary, that the defendants must be believed to have conspired and confederated together, with a deliberate design to prevent the plaintiffs from recovering their debt, by placing the property in question in a situation such as would allow Jacob to use it as he might think proper, and, at the same time, to hinder the plaintiffs from availing themselves of it in order to the satisfaction of their demand.

Many plausible objections have been made, and ingeniously urged by the counsel for the defendants, to the right of the plaintiffs to recover. One is, that the property conveyed has always been in Jacob's possession; and that Samuel never had the actual possession of it, or derived any benefit from it; so that it might always have been attached as Jacob's. This may be true, and probably is. But if Samuel had combined with Jacob, as it seems to us was evidently the case, colorably to have the right of property appear to be in Samuel, with a view to aid Jacob, in deterring his creditors from attaching it, a fraud clearly within the statutes of Elizabeth, was perpetrated, of which the plaintiffs have a right, in this mode of proceeding, to avail themselves.

Again; that the part of the property conveyed to Samuel was real estate, and that the plaintiffs might have levied upon it, until which no lien was created in their favor.

To this two answers may be given. One is, that the title to the real estate, designated in the bill and answers, was never otherwise than equitably in Jacob; and that was transferred to Samuel by procurement of Jacob, so that it never could have been levied upon as a legal estate in Jacob; nor after the plaintiffs obtained their judgment as an equitable estate, under the statutes of this State. All the plaintiffs, in such case, could do, was to sue out their execution; and, upon its being returned *nulla bona*, on the institution of this suit, an equitable lien in preference to other creditors, would be created in favor of the plaintiffs on any fund which might

be found to arise from the fraudulent purchase, by Samuel, without adequate consideration paid therefor, of any interest his son had in any real or other estate. *Gordon* v. *Lowell & al.* 21 Maine, 257. But, leaving the real estate out of the question, there was personal estate, which we must deem to have been colorably transferred, more than sufficient, as the same was estimated, to have paid the debt to the plaintiffs ; so that it may be quite unimportant to consider of the real estate, further than the transactions in connection with it, may furnish elucidation in reference to the character of the whole negotiation. And it may be noted, that the two parcels of real estate, which appear to have been transferred at the same time with the chattels, as the one was sold by Samuel, and as the other was estimated in the deed of conveyance, would not have fallen much, if any, short of paying the debt supposed to be due to Samuel.

Again ; it is urged that, to entitle the plaintiffs to prevail, the fraud should exist at the time of the filing of the bill ; that it does not appear but what, at that time, the property pretended to be conveyed had gone to satisfy the other creditors of Jacob ; and so that the alleged fraud may then have been purged. But, if such were the case, it was matter properly in defence, which should have been averred in the answers, and substantiated by proof; until which the presumption should be that it remained, as at the time of the alleged nefarious transfer, and operated, therefore, as a continuing fraud. But, whether so or not, it is far from being clear, that the cause of complaint on the part of the plaintiffs, could have been so annulled ; and, whether it could be admitted even in mitigation of the damages to be recovered, it is unnecessary to inquire.

It will therefore be equitable and just, and according to the course of equity proceedings, and within the jurisdiction of this court, that a decree should be entered against the defendants, to pay to the plaintiffs the amount of their debt, with interest thereon from the time of the rendition of judgment therefor, with costs of this suit.