## KIMBERLING *v.* HARTLY and another.

*(Circuit Court, E. D. Kansas. —— ——, 1880.)*

EQUITABLE LIEN—FRAUDULENT CONVEYANCE BY JUDGMENT DEBTOR—BILL FILED BY JUDGMENT CREDITOR.—Judgment, execution, and a return of *nulla bona* place the judgment creditor in a position to assail conveyances made by the judgment debtor to defraud his creditors, and the filing of a bill for that purpose, and the service of process in the action, create a lien in equity upon the lands described in the bill, and entitle the plaintiff to priority over other creditors.

SAME—BANKRUPTCY.—The lien thus created is not displaced by the subsequent bankruptcy of the judgment debtor, but is protected by the bankrupt act.

ASSIGNEE IN BANKRUPTCY—SELECTION OF BANKRUPT'S PROPERTY.—Assignees in bankruptcy are not bound to take all the property of the bankrupt, but may reject such as may be rather a burden than a benefit to the estate.

BANKRUPTCY—JURISDICTION OF STATE COURT IN SUIT PENDING.—Where an action is pending in a state court of competent jurisdiction to enforce a specific lien on property of the debtor, the subsequent bankruptcy of the debtor does not divest the state court of its jurisdiction to proceed to a final decree in the cause and execute the same. The assignee in bankruptcy may intervene in such action, but the jurisdiction of the state court and the validity of its decree is not affected by his failure to do so.

ASSIGNEE IN BANKRUPTCY—ASSIGNMENT PENDENTE LITE—SUBSEQUENT PROCEEDINGS.—The rule that one who purchases *pendente lite* is bound by the subsequent proceedings, is applicable to an assignee in bankruptcy, and to the transfer made by a bankruptcy proceeding.

On the 8th day of February, 1875, the defendant John Hartly, recovered judgment in the circuit court of White county, Arkansas, against Thomas J. Oliphant for the sum of $280.27, upon which judgment execution was issued and returned *nulla bona*. November 22, 1875, the judgment creditor, Hartly, filed his bill on the equity side of the White county circuit court, alleging the above facts, and further alleging that the judgment defendant, Oliphant, was the owner

in fee of the real estate in controversy in this case, and that sometime prior to the rendition of the judgment in favor of Hartly he conveyed the same to his wife, Georgia Oliphant, with the limitation in substance that the land was to revert to him if his wife should die without children. The bill alleged this conveyance to his wife was voluntary, and made to hinder, delay and defraud his creditors, both existing and subsequent, and prayed that the property might be decreed to be sold to satisfy the plaintiff's judgment. Oliphant and his wife were made defendants to the bill. Oliphant was served with process the day the bill was filed, and afterwards appeared to the action.

In June, 18,76, Oliphant was, on his own petition, adjudged a bankrupt by the district court of the United States for the eastern district of Arkansas. He did not schedule the property in question as part of his assets. Georgia Oliphant, the wife, died in July, 1876, and the action abated as to her, and the plaintiff and defendants in this action concede that, under the limitation in the deed, the legal title to the land reverted to Oliphant at her death. Oliphant's assignee in bankruptcy never asserted any claim to the property nor sought to become a party to the suit, and was not made a party, and was discharged by the bankrupt court before final decree in the case. Hartly never proved his judgment as a debt against the estate of the bankrupt. Oliphant never answered the bill, but before final decree filed his certificate of discharge in bankruptcy in the case, and moved to dismiss the cause for want of jurisdiction, and because his assignee in bankruptcy was not made a defendant.

On the twenty-seventh of January, 1877, a final decree was rendered in the cause, in accordance with the prayer of the bill. From this decree Oliphant appealed to the supreme court of the state, where the decree below was affirmed. *Oliphant* v. *Hartly*, 32 Ark. 465.

The property was sold under the decree, and purchased by Hartly, the plaintiff in that action, and one of the defendants in the present suit. Afterwards Oliphant, the bankrupt, conveyed the property to the present plaintiff, who

brought this action of ejectment to recover the property from the purchaser at the sale made under the decree of the state court. To the answer, which by agreement is to be taken as setting up with the requisite fullness and particularity the above facts in bar, the plaintiff filed a demurrer.

*T. J. Oliphant*, for plaintiff.

*B. D. Turner*, for defendant.

CALDWELL, J. The plaintiff contends that when Oliphant was adjudged a bankrupt the state court was without jurisdiction to proceed further in the pending cause, unless the assignee was made a party, and that, as that was not done, the decree of that court, and sale and conveyance thereunder, are nullities, and that, as the land reverted to Oliphant under the limitation in the deed to his wife, after he was adjudged a bankrupt, it was a new acquisition, and his deed invested plaintiff with the legal title. Judgment, execution, and a return of *nulla bona* thereon, placed the judgment creditor in a position to assail any conveyances made by the judgment debtor to defraud his creditors, and a bill was filed for that purpose, making the judgment debtor and the alleged fraudulent grantee defendants. Proper process issued and was duly served on the judgment debtor, to whom, under the limitation contained in the deed to his wife, it is conceded the legal title to the property reverted upon her death, which occurred soon after the institution of the suit, and after that event Oliphant was the sole proper defendant in the action.

By these proceedings the state court acquired complete jurisdiction over the parties to the suit, and the subject-matter of the action; and the plaintiff acquired a lien in equity on the lands mentioned in his bill, and the right, if he established the fraud, to subject them to the payment of his judgment. The law is well settled that the filing of such a creditor's bill, and the service of process in the action, create a lien in equity upon the lands described in the bill, and entitle the plaintiff to priority over other creditors. *Storm* v. *Waddell*, 2 Sandf. Ch. 494; *Tilford* v. *Burnham*, 7 Dand. 110; *Maffitt* v. *Ingham*, Id. 495; *Hartshorn* v. *Eames*, 31 Me. 93; *Newdigate* v. *Jacobs*, 9 Dana, 18; *McDurmott* v. *Strong*, 4

John. Ch. 687; *Spader* v. *Davis*, 5 John. Ch. 280; *Carr* v. *Farrington*, 63 N. C. 560; *Fetter* v. *Cirode*, 4 B. Mon. 482; *Day* v. *Washburne*, 24 How. 352; *Clark* v. *Rist*, 3. McLean, 494.

"It has been aptly termed an equitable levy." *Miller* v. *Sherry*, 2 Wall. 249. And this lien is not displaced by the subsequent bankruptcy of the judgment debtor, but is protected by the bankrupt act. Section 5075, Rev. St.; *Clark* v. *Rist*, 3 McLean, 494; *Sedgwick* v. *Mench*, 6 Blatch, 156; *Parker* v. *Merggridge*, 2 Story, 334; *Storm* v. *Waddell*, *supra*; *Carr* v. *Farrington*, *supra*; *Fetter* v. *Cirode*, *supra*; *Newdigate* v. *Jacobs*, *supra*; *McDurmott* v. *Strong*, *supra*; *Goddard* v. *Weaver*, 1 Wood, 260; *Yeatman* v. *Savings Institution*, 95 U. S. 764; *Stewart* v. *Platt*, U. S. Sup. Ct., October term, 1879, 12 C. L. N. 201.

Conceding that by the bankruptcy of the judgment debtor his assignee in bankruptcy acquired the right to make himself a party to the pending creditors' bill, and prosecute the same, it by no means follows that because he did not do so the state court was deprived of jurisdiction. The assignee succeeded to the right the creditors of the bankrupt or any one of them had, or might have obtained, by appropriate action, to avoid any conveyance made by the bankrupt in fraud of his creditors. But in any suit brought by the assignee for this purpose the creditors' liens on the property, whether acquired by creditors' bill or otherwise, would not be displaced or annulled; and, if the suit was successful, the assignee would have to distribute the fund according to priority of liens and right between the creditors. And if the property did not exceed in value the amount of Hartly's lien upon it, and other creditors would derive no benefit from the suit, the assignee acted wisely in not intervening and allowing the lien creditor and the bankrupt to settle the controversy between themselves in the state court without expense to the estate.

"Assignees are not bound to take *all* the property of the bankrupt, but may reject such as may be rather a burden than a benefit to the estate." 1 Deacon on Bank. 535;

*Amory* v. *Lawrence,* 3 Clifford, 523, *et seq.; McLean* v. *Rocky,* 3 McLean, 235; *Rugely & Harrison* v. *Robinson,* 19 Ala. 404, 417; *Glening* v. *Langdon,* 98 U. S. 20, 30; *In re Lambert,* 2 Bank. Reg. 138.

The judgment creditor filed his bill, had a subpœna served, and thereby acquired a lien before the commencement of proceedings in bankruptcy. He did not prove his debt against the estate of the bankrupt, or in any manner voluntarily submit himself to the jurisdiction of the bankrupt court, but was allowed to proceed to enforce his lien without objection from that court or the assignee. In this state of the case the state court had a right and it was its duty to proceed with the cause; its jurisdiction was complete, and its decree and the title acquired under it are as valid and effectual as if the bankruptcy of the defendant had not intervened. *Sedgwick* v. *Mench,* 6 Blatch. 156; *Clark* v. *Rist,* 3 McLean, 494; *In re Davis,* 1 Sawyer, 260; *Goddard* v. *Weaver,* 6 Bank. Reg. 440; *Second Nat. Bk.* v. *Nat. St. Bk.* 10 Bush. 367; S. C. 11 Bank. Reg. 49; *Davis* v. *Railroad Co.* 1 Wood, 661; *Norton's Assignee* v. *Boyd,* 3 How. 426; *Townsend* v. *Leonard,* 3 Dill. 370; *Johnson* v. *Bishop,* 1 Wood, C. C. R. 374; *Reed* v. *Bullington,* 49 Miss. 223; S. C. 11 Bank. Reg. 408; *Waller's Assignee* v. *Best,* 3 How. 111.

Cases holding a contrary view have been cited in the argument; but all doubts and conflict of authority upon the question have been removed by the authoritative judgments of the supreme court of the United States. *Marshall* v. *Knox,* 16 Wall. 551; *Doe* v. *Childress,* 21 Wall. 642; *Eyster* v. *Gaff,* 91 U. S. 521.

In *Dorr* v. *Childress* the facts were that the land was attached in a suit in the state court in April, 1867, and that the defendant was declared a bankrupt in February, 1868, four months before a decree was obtained in the suit, and seven months before the sale took place under the decree, and the court said: "The Tennesse court of chancery having jurisdiction of the subject of the proceeding in the attachment suits, no defence being interposed by the assignee in the state court, and no means having been taken to arrest their

proceedings, or to transfer them to the bankrupt court, (if power to take such steps existed,) and there being no fraud proven or alleged, we are of opinion that a good title was obtained under the decree of sale made in the state court."

In *Eyster* v. *Gaff* the facts were that a suit to foreclose a mortgage was commenced in the state court in 1868; that the mortgagor and defendant in the suit was adjudged a bankrupt in May, 1870, and that a decree was rendered in the foreclosure suit in the state court in July, 1870, upon which the property was sold. The bankrupt's assignee did not intervene and was not made a party. The court held that the state court had jurisdiction, and that the decree and sale were valid. Mr. Justice Miller, delivering the opinion of the court, said: "It is almost certain that if at any stage of the proceedings, before sale or confirmation, the assignee had intervened, he would have been heard, to assert any right he had, or set up any defence to the suit. The mere filing in the court of a certificate of his appointment as assignee, with no plea or motion to be made a party or take part in the case, deserved no attention and received none. In the absence of any appearance by the assignee, the validity of the decree can only be impeached on the principle that the adjudication of bankruptcy divested the other court of all jurisdiction whatever in the foreclosure suit. &ast; &ast; &ast; This court has steadily set its face against this view."

There is nothing in the case of *Gleaning* v. *Langdon*, 98 U. S. 20, that conflicts with these views. In that case a creditor, after his debtor had been adjudged a bankrupt, brought a creditor's bill to recover property conveyed by the bankrupt in fraud of his creditors, alleging, as ground for doing so, that the assignee refused to bring the suit, and for that reason making the assignee a defendant. The creditor had no lien on the property, and suit was brought after the adjudication in bankruptcy and the appointment of an assignee, and the court say that in such case the assignee must bring the suit, and point out the proper mode of proceeding by the creditors, in the event that he wrongfully refuses to do so. There was no *lis pendens* and no lien in that case before

the bankruptcy, and the property and right of action passed absolutely to the assignee, and he alone had the right to sue.

In the case at bar there was a *lis pendens* and a lien, and the creditor had a right to proceed to satisfaction in the state court unless he was stayed by some appropriate affirmative action of the assignee or the bankrupt court. The distinction in the two cases is obvious, and is clearly pointed out in *Winters* v. *Claiton*, 54 Miss. 341; S. C. 18 Bank. Reg. 533.

The rule is well settled that an assignee *pendente lite*, whether he be the claimant of a legal or equitable interest, or whether he be the assignee of the plaintiff or of the defendant, need not be made a party to the bill, and is bound by the decree. Story's Eq. Pl. § 156.

It is generally true that this rule does not apply to assignments by mere operation of law, and it has been held not to apply to an assignee in bankruptcy of the defendant. Story's Eq. Pl. § 158*a*; *Lowry* v. *Morrison*, 11 Paige, 237. But the supreme court of the United States, in *Eyster* v. *Gaff*, *supra*, seems to place assignees in bankruptcy, so far as relates to pending suits to enforce liens on the bankrupt's property, on the same footing as a purchaser *pendente lite*. The court say: "We see no reason why the same principle [that one who purchases *pendente lite* is bound by the subsequent proceedings] should not apply to the transfer made by a bankrupt proceeding."

In that case, as we have seen, pending an action to foreclose a mortgage, the mortgagor was adjudged a bankrupt, and the court, after stating that the assignee might have made himself a party, say that "if he chose to let the suit proceed without such defence he stands as any other person would on whom the title had fallen since the suit was commenced." And see *Carr* v. *Farmington*, 63 N. C. 560.

The discharge of the bankrupt pending the suit did not discharge or impair the lien acquired by the commencement of the suit. A decree *in personam*, against which the discharge, if properly pleaded, would have been effectual, was not sought or rendered, and the discharge was unavailing against

a proceeding *in rem* to subject property to the satisfaction of a lien antedating the commencement of proceedings in bankruptcy.