## Case No. 2,861.

### CLARKE v. RIST et al.

[3 McLean, 494;[1] 2 West. Law J. 252.]

Circuit Court, D. Ohio. Dec. Term, 1844.

BANKRUPTCY—ACT OF 1841—LIEN—ENJOINING PROCEEDINGS IN STATE COURT.

1. Where a judgment is fairly obtained against a defendant who has only equitable rights, and a creditor's bill is filed to subject those rights to the payment of the judgment, if the process issued on filing the bill be served before the defendant's petition is filed under the bankrupt law, the proceeding constitutes a lien under the bankrupt law.

[Cited in Johnson v. Rogers, Case No. 7,408; Kimberling v. Hartly, 1 Fed. 574; Platt v. Mead, 9 Fed. 96.]

2. In such a case, the court will not issue an injunction to restrain the parties from proceeding on the creditor's bill in the state court.

[Cited in Clark v. Binninger. 38 How. Pr. 341; Myer v. Crystal Lake Pickling & Preserving Works, 14 N. B. R. 16; Kimberling v. Hartly, 1 Fed. 575.]

3. If fraud were alleged against the lien set up in the state court, that would be a ground on which the circuit court might take jurisdiction.

In equity.

Mr. Clarke and Mr. Coffin, for plaintiff.

Mr. Moodey and James Mason, for defendants.

LEAVITT, District Judge. This bill is filed by the complainant, as the assignee in bankruptcy of Godfrey Beaumont. The facts be-

[1] [Reported by Hon. John McLean, Circuit Justice.]

fore the court, so far as it is necessary to notice them, are—that in 1842, the bankrupt Beaumont was possessed of an equitable interest in certain valuable real estate, described in the bill; and in connection with his two sons, constituting the firm of J. Beaumont and Sons, was engaged in business, in the county of Columbiana, as a manufacturer of woollen goods; that in the early part of November, of that year, this firm, laboring under some embarrassments in their business, transferred by bill of sale, to one Springer, nearly all their personal property, to indemnify him for his suretyship to the Bank of New Lisbon, and Springer took possession of said property, the 1st of December, 1842; that at the November term, in said year, of the court of common pleas of said Columbiana county, sundry judgments were obtained against the firm of Beaumont & Sons; on which executions severally issued the 2d of December, and were returned partially satisfied by a levy on personal property of the defendants; that shortly after, the plaintiffs in the several judgments recovered against said firm, filed bills in chancery in said court of common pleas, to subject the equitable interest of G. Beaumont in the real estate aforesaid, to the satisfaction of such judgments; and subpoenas duly issued, and were served in said cases, between the 3d and 7th of December. It also appears, that the Beaumonts filed their several petitions for the benefit of the bankrupt law [of 1841, 5 Stat. 440], the 15th of December, 1842, and were decreed bankrupts, and the complainant appointed their assignee, the 30th of January following; that soon after his appointment as assignee, the complainant was made a party to the proceedings in chancery, instituted by the judgment creditors, as aforesaid; and, as such appeared, and filed answers, denying the jurisdiction of the court, and insisting on the dismissal of the bills on that ground; that the court of common pleas retained jurisdiction of said petitions in chancery, and upon hearing decreed the sale of Beaumont's equitable interest in the real estate aforesaid, and the distribution of the proceeds among the judgment creditors; but no sale has yet been effected. It is also charged in the bill, that the counsel for the judgment creditors had notice of the assignment to Springer, and that Springer was in possession under it, previous to the institution of said proceedings in chancery. The bill prays for an injunction, restraining the parties from further proceedings in the state court; and, that the liens of said judgment creditors may be set aside, and the property sold by the complainant, for the benefit of the general creditors of G. Beaumont.

The question arising on this state of facts, and which this court is called upon to decide is, whether the judgment creditors (the defendants in this case) by their judgments, and the institution of the proceedings in chancery, to charge the equitable interest of

the bankrupt as set forth in the bill, have acquired a lien on that interest, which is protected by the bankrupt law. The last proviso of the second section of the act declares, "that nothing in this act contained shall be construed to annul, destroy or impair, any lawful rights of married women, or minors, or any liens, mortgages, or other securities on property, real or personal, which may be valid by the laws of the states respectively, and which are not inconsistent with the second and fifth sections of this act."

It is insisted on the part of the complainant, that the application of Beaumont for the benefit of the bankrupt law, suspended the jurisdiction of the state court in the chancery proceedings; and, that consequently, the decrees of that court in favor of the judgment creditors, for the sale of the equitable interest of Beaumont, in the real estate in question, were inoperative, and created no valid lien, in their behalf. On the other hand, it is contended, that as these judgments against Beaumont were obtained in the usual course of proceedings in the state courts, and without fraud or collusion between the parties, the court had full jurisdiction of the chancery proceedings, in their inception; that the subsequent application in bankruptcy by Beaumont, did not deprive that court of its power to proceed; and, that from the date of the service of subpoenas in the chancery cases, a lien existed in behalf of the judgment creditors, which this court will recognise and protect. It will be seen from the provision of the bankrupt act, above quoted, that liens which are valid by the state laws, and are not opposed to, and in contravention of, the bankrupt law, are unimpaired by its operation. The law of Ohio, under which the judgment creditors filed their bills, is intended to afford the means by which certain property and interests of a judgment debtor, may be rendered available for the payment of his debts, which could not be reached by the ordinary process of execution. To charge the equitable interests of a judgment debtor in real estate, and subject those interests to the payment of a previously acquired judgment, is one of the most common cases, in which this statutory proceeding is resorted to. The creditor, on a proper case made, is entitled by the provision of the statute, to a decree for the sale of the equitable interest of the judgment debtor. The statute declares, that "the said courts shall decree sales, and enforce all necessary transfers and conveyances, to vest in any person purchasing, or taking under such decree, all the right, title, and interest of the said debtor, in the interest sold, or the subject of the decree, at the time of the service of process in such case," &c. Swan's St. 704. From the language here used, it is undeniable that the lien of the judgment creditor is coeval with the date of the service of the subpoena in chancery. This, it is understood, is in accordance with the uniform construction of the law by the courts of Ohio, and the practice of those courts under it. The statute proceeds on the principle, that by the judgment at law the creditor acquires an inchoate right to the equitable interest of the judgment debtor; which, however, can only be perfected and made available, by a decree of sale by a court of chancery. But it is within the evident design of the statute, that from the time of the service of the process in the chancery proceeding, legal validity and force are given to this previously existing, but imperfect right. Under a similar statute in New York, the same practice and the same principle of construction have obtained in the courts of that state. The case referred to in the argument of this case, decided by the district judge for the northern district of New York, reported in the fifth volume of the Law Reporter, page 362 [General Assignee, Case No. 5,305], is very analogous in its facts to that now under consideration. In that case, certain creditors of a bankrupt, previously to the entry of a decree of bankruptcy, had filed their petitions in chancery, in a state court, under the statute of New York, to charge certain equitable interests of the bankrupt with the payment of their judgments. And the court held, that in the absence of any facts impeaching the original judgments as being fraudulent under the bankrupt law, the liens of the judgment creditors were protected; and an injunction to stay the proceedings of the parties in the state courts was refused.

The inquiry then arises, whether in the rendition of the several judgments in favor of the defendants in this bill, there was fraud, in fact or in law, vitiating not only those judgments, but also the subsequent proceedings in chancery, instituted to enforce the asserted liens, which are the subjects of controversy in this case. By the second section of the bankrupt act, it is provided in substance, that all payments, securities, transfers, &c., in contemplation of bankruptcy, and for the purpose of any preference or priority to any creditor, &c., or to any person, not being a bona fide creditor, or purchaser for a valuable consideration, without notice, shall be deemed utterly void, &c. The settled and uniform construction given to this clause is, that it condemns and invalidates all transfers of property, or rights of property, made in view or contemplation of an application for relief under the law; or, when the person is in such a condition of embarrassment as amounts to a state of bankruptcy, under either of the circumstances here supposed, it is in direct contravention of the policy of the bankrupt law, that the bankrupt should make any changes or transfers of his property, whereby the rights of his general creditors may be injuriously affected. Do the transactions between the bankrupt, Beaumont, and the defendants, fall within the prohibitions of this provision? In refer-

ence to the judgments obtained against the bankrupt, there is no allegation in the bill, that there was any actual fraud or collusion, in their entry or rendition. Nor is there any fact before the court from which, as a matter of necessary legal deduction, those judgments can be pronounced invalid. They were obtained in November, 1842, for debts contracted long before; and according to the usual course of proceedings in the state courts, either upon the issue and service of process, or by virtue of warrants of attorney previously executed for that purpose. The judgment creditors are not charged with a knowledge of the bankruptcy of the Beaumonts, at the time of the entry of these judgments; though the allegation is made, that their counsel was apprised of the bill of sale to Springer, before the commencement of the proceedings in chancery. But this does not infect the judgments with the taint of actual or constructive fraud. And no doubt can be entertained that, if Beaumont had then possessed the legal estate in the lands in controversy, the lien of the judgment creditors would have been effective and wholly unimpaired by subsequent application for relief under the bankrupt law. This position is fully sustained by the opinion of Judge McLean in the case of McLean v. Rockey [Case No. 8,891]. It is there said: "that a judgment constitutes a lien on real estate, which is recognised in the second section of the bankrupt law, is undisputed." And there is no allegation in the bill, that either in the causes of action, or in the prosecution of the above suits to judgment, there was fraud. The judgments therefore, having been rendered against the bankrupt, before his petition was filed, create a valid lien on his real estate. Are the rights of these judgment creditors impaired by the fact that at the time the judgments were rendered, the bankrupt Beaumont had no legal interest in the property in question on which a lien attached, under the statute of Ohio? The interest of Beaumont, as already stated, was merely an equitable interest. The proceedings under the statute, in the state court, to charge those interests, have been noticed. And it is to be observed, that these proceedings do not partake of the character of original suits. They are to be regarded in the light of incidents, or continuations of those suits. It would seem clear, from this view, assuming the judgments to be valid, that the state court had undoubted competency to entertain jurisdiction of the chancery proceedings, both before and after the application was filed by Beaumont for relief, under the bankrupt law. The lien of the judgment creditors, though not perfect on the rendition of the judgments, became so upon the service of the process in chancery, which was prior to the filing of the application in bankruptcy. These creditors then occupy the same position, and are entitled to the same rights, as if the bankrupt had possessed the legal estate, instead of an equitable interest, in the lands mentioned in the bill. Their liens are saved under the bankrupt law; and the state court having rightfully taken jurisdiction of the proceedings, designed to perfect those liens, may retain it, till the object sought for is consummated, in accordance with the statute. It is regarded as indisputable, that there is no ground for the imputation of fraud, actual or constructive, in commencing and carrying forward the chancery proceedings in the state court. If fraud attaches to these, it must be because the conduct of the parties has given them this quality or characteristic. So far as the judgment creditors are concerned, there is clearly no room for any unfavorable inference. They stand before the court on the footing of persons, who, with no discreditable vigilance, have legitimately pursued their rights, under a statute sanctioning the procedure to which they resorted. Nor is there any better foundation for an impeachment of the conduct of the bankrupt. It was not by his procurement or agency, that the creditors commenced proceedings to enforce their equitable liens. In these transactions he was merely passive; and could not therefore have imparted to them the quality of fraud. By these judgments, and the subsequent proceedings thereon in the state court, the defendants in the bill acquired a bona fide lien, prior to the filing of the petition in bankruptcy. The equitable interest of the bankrupt, in the property in question, did not therefore pass to, and rest in, his assignee; and no ground is presented for the exercise of the power of this court, in the withdrawal of those interests from the final disposition of the state court. The lien of the judgment creditors is saved, by the express terms of the bankrupt law; and this court has neither the right or the inclination to disturb it.

In the argument of the counsel for the complainant, the decision of this court in the case of McLean v. Lafayette Bank [Case No. 8,885], was referred to; and it was insisted, that the principles laid down by Judge McLean in the opinion delivered by him, vindicate the exercise of the jurisdiction of this court, in the case in which it is now invoked. But it will be observed, that the two cases differ in many essential features. In that decided by Judge McLean, there are various liens on the property of the bankrupt, by mortgages and judgments; some pending in a state court for adjudication; and in regard to all the liens, there was an express "allegation in the bill, that they were given in fraud of the bankrupt act." The judge, after reviewing the ample jurisdiction conferred on the federal courts by that act, in the settlement of all controversies growing out of bankruptcy, very justly concludes, "that where the foundation of the liens depends upon the construction of the bankrupt act, it would seem that the jurisdiction under

which the law was passed, should carry it into effect." The case was argued on a motion to dissolve the injunction, so far as the rights of one of the defendants was concerned; and on full consideration, the motion was refused, and the case continued for final hearing; but with the express declaration by the court, that the question of jurisdiction was not to be considered as finally decided.

In controversies, involving the proper construction of the bankrupt act, the validity of liens under it, and the adjustment of conflicting rights and priorities, there is great propriety in invoking the exercise of the jurisdiction of the federal courts. Their powers in these matters are more ample than those possessed by the state courts, and they can more satisfactorily act upon and adjust the rights of all the parties concerned. But when a state tribunal has rightfully taken jurisdiction of a case, though having some connection with an estate in bankruptcy, it affords no sufficient reason for its withdrawal from that jurisdiction, that a federal court might have taken cognizance of it. And it is proper, that the courts of the nation should cautiously abstain from the unnecessary exertion of powers, which may bring them into conflict with the state courts. Nothing can tend to the more serious disturbance of the harmonious action of the state and federal authorities, than these conflicts. And as far as practicable, consistently with the operation of the just powers of each, they are to be studiously avoided. The injunction prayed for is refused.