## N. Y. SUPERIOR COURT.

### CLARK agt. BINNINGER.

The United States court in bankruptcy has no jurisdiction or power, to interfere with or to arrest the proceedings of a state court, in the ordinary and legitimate administration of justice.

Consequently, in an action in the state court between partners, for a dissolution of the copartnership and for the winding up of the business of the firm, &c., in which an injunction is granted and a receiver appointed, who has taken possession of the partnership property, an *assignee in bankruptcy proceedings*, commenced subsequently against the same parties in the United States district court, has no right to demand of the receiver possession and control of the property in charge of the latter; and where this is done by the assignee, he will be deemed in *contempt* by the state court.

*Special Term, February*, 1870.

THE motion is to punish the respondent, John S. Beecher, for contempt of court, in violatieg an order of injunction, and in disturbing the possession of a receiver appointed by order of this court.

> ROGER A. PRYOR *and* JAMES F. MORGAN, *counsel for motion.*
>
> MR. BANGS, *opposed.*

McCUNN, J.—The respondent admits the facts constituting the contempt, but urges, in justification, an alleged authority as assignee in bankruptcy, to demand and receive possession of the property in the hands of the receiver of this court.

Thus, the single question before me is the sufficiency of the justification presented by the respondent, and the decision of that question turns on the authority of the federal court in bankruptcy to interfere with or to arrest the pro-

ceedings of a state court in the ordinary and legitimate administration of justice.

The action in this court was in the nature of a bill in equity, brought by one partner against another on the dissolution of the copartnership, for the purpose of winding up the copartnership, paying the creditors, and adjusting the reciprocal rights and equities of the copartners. That action is progressing in an orderly course of development towards a final judgment, wherein the rights and interests of the several creditors, as well as of the partners *intersese*, will be ascertained, adjusted, and protected upon the principles of equity applicable in analogous cases.

In aid of the ultimate relief an injunction was granted and a receiver appointed, with a view to the protection of the copartnership property *pendente lite*.

The action was commenced on the 19th day of November, 1869; on the 19th day of November, 1869, a receiver of the copartnership property was appointed; on the said 19th of November the receiver executed and filed the requisite bond; on the said 19th of November the receiver took possession of the copartnership property, and has remained in possession to the present moment.

The regularity and validity of these proceedings, in this court, are not to be impeached by any federal tribunal (*U, S. Constitution, art. IV.* § 1; *ex parte Burns,* 7 *Law Reg.,* 105; *Atkinson* agt. *Purdy, Crabbe,* 551; *United States* agt. *Howland,* 4 *Wheaton,* 115; 10 *Wheaton,* 25).

The instant the receiver took possession, the copartnership property passed into the custody and control of this court, of which he was the officer. His possession is the possession of the court.

So by virtue of the order of this court appointing the receiver, and the filing his bond in pursuance of that order, the receiver was vested with the legal title to all the copartnership property; that property, in contemplation of law, is no longer the property of the copartnership, and their

only interest in it is an equitable right to whatever surplus may remain after satisfaction of the copartnership's creditors.

On the 11th of December, 1869, proceedings in bankruptcy were commenced against the copartnership of Binninger & Clark; on the 22d of December, 1869, they were adjudicated bankrupts; and afterwards, on the — day of ——, John S. Beecher was appointed assignee.

Afterwards, on the — day of January, 1870, the said assignee demanded of the said receiver the possession of the property of the said copartnership, which possession the receiver refused to surrender or deliver to the assignee.

Recognizing and respecting the legitimate powers of the district court, I nevertheless contest the authority of that honorable court to oust the already attached jurisdiction of the superior court, and to compel the surrender, by its officer, of property duly and lawfully in its custody, and which is now in course of judicial administration.

That court, as a court of bankruptcy, is the creature of statute, and has no power beyond that expressly conferred upon it (*ex parte Hugh Campbell*, 7 *Am. Law Reg.*, 100).

Antecedently to and independently of the bankrupt act of March 2d, 1867, that court had no authority to enjoin parties or proceedings in a state court, nor otherwise in any way to interfere with its process or proceedings (*Act of March* 2, 1793; *Kent's Com.*, 412; 3 *Story's Com.*, 521–626).

No such authority is conferred by the bankrupt act of March 2d, 1867, neither in terms nor by implication (*ex parte Campbell, supra; Clark* agt. *Rist*, 3 *McLean*, 494; *Matter of Burns*, 7 *Am., Law Reg.*, 105; *Atkinson* agt. *Purdy, Crabbe*, 557).

The bankrupt act expressly reserves and preserves intact all liens existing at the commencement of the proceedings in bankruptcy, (*Sec.* 14 *Bankrupt Act*, 1867; *Clarke* agt. *Rist, supra; ex parte, Donaldson*, 16 *Am., Law Reg.*, 213; *Matter of Allen*, 1 *N. Y. Legal Obs.*, 115; *Re Houseberger* agt. *Zibeticn*, 2 *Bank. Reg.*, 33.)

Upon familiar principles, each partner has a *specific lien* on the copartnership property, for the satisfaction of the copartnership debts, and for the payment of any surplus that may remain to him after the adjustment of the rights and equities between themselves; and the object of a suit in equity between patners—particularly of the action in the superior court, is to enforce and effectuate that lien, (*Lindley on Partn.*, 577, *et seq*).

The intent and policy of the bankrupt law of 1867, is to insure an equitable appropriation of the debtor's property to the satisfaction of the claims of creditors; hence, the only transfers and assignments which it denounces and invalidates, are transfers and assignments *in preference or in fraud of creditors* (*sec.* 39). Nothing in the bankrupt act distinguishes and declares the district court the only forum where a just and equitable distribution of the debtor's property can be consummated; and the jurisdiction of other tribunals of competent authority, except in administration of bankruptcy, is neither expressly nor impliedly excluded.

When this court acquired jurisdiction of the copartnership, no proceeding in bankruptcy had been instituted, and there was then no pretense of claim for the jurisdiction of the district court.

The amity subsisting between the tribunals of kindred and associated governments, forbids the suggestion in the district court that the action in this, the superior court, can terminate otherwise than in an equitable administration of the copartnership effects; nor can it be contended for a moment that the commencement of an action in a state court, is an act of bankruptcy, nor is it obnoxious to the provisions or policy of bankruptcy law.

The superior court of the city of New York, and the district court, in administering the affairs of dissolved or insolvent copartnerships, proceeds upon the same principles and with an equal solicitude to protect the rights of credi-

tors ; hence, there is no occasion, with a view to justice or equity, why the district court should attempt to oust the jurisdiction of this court

My position is grounded as well upon authority as reason. In the cases cited below—all federal adjudications—the power and jurisdiction claimed for the district court were, in some instances, impliedly, and in others, most expressly and distinctly disclaimed and repudiated by the very tribunals in whose favor these anomalous pretentions were assserted. (*Sedgwick, Assignee, agt. Minck, et al.*, 1 *Bankrupt Reg.*, 204; *Sedgwick, Assignee, agt. Place et al.*, 1 *Bankrupt Reg.*, 204; *in the matter of Hugh Campbell*, 7 *Am. Law Reg.*, 100; *in re Burns*, 7 *Am. Law Reg.*, 105; *Hawkin's Appeal and Am. Law Reg.*, 205; *S. C.*, 2 *Bankrupt Reg.*, 122; *Taylor agt. Canyl*, 20 *How., U. S.*, 584; *ex parte Allen*, 1 *N. Y., Legal Obs.*, 115; *Clarke agt. Rist*, 3 *McLean*, 494; *Sulivan agt. Hieskell, Crabbe*, 525; *ex parte Dudley*, 1 *Penn. L. J.*, 302, 323; *Atkinson agt. Purdy, Crabbe*, 557; *ex parte Donaldson*, 16 *Am. Law Reg.*, 213; *in the matter of Smith*, 1 *Bankrupt Reg.*, 169; *in re Miles W. Hill*, 2 *Bankrupt Reg.*, 53; *Langley agt. Penny*, 8 *Am. Law Reg.*, 428; *Farrin agt. Crawford*, 2 *Bankrupt Reg.*, 181; *in re Marks*, 2 *Bankrupt Reg.*, 175; *re Hazleton*, 2 *Bankrupt Reg.*, 12; 4 *Cranch*, 179; 7 *How. U. S.*, 612, 625).

Let us see what some of the most learned and eminent members of our federal courts say upon this subject. In 1868, Judge McCANDLESS, of the western district of Pennsylvania, says, *in the matter of Hugh Campbell*, a bankrupt, cited above, (that was a motion to dissolve an injunction against the sheriff, and which was granted): "Have we the right to interfere with the court of a state in the legitimate exercise of its functions? After much reflection, I am satisfied we have not, nor with the actors or parties litigating before them." After citing some portions of the bankrupt law, whereby those without legal acumen might

be led to think some power was granted to interfere with state courts and their proceedings, he says, "staring them in the face was the act of the 2d of March, 1793. Section five expressly declaring, "nor shall a writ of injunction be granted to stay proceedings in any court of a state;" and Judge McCANDLESS, in the same case expressly holds "that there is nothing in the bankrupt law to repeal this statute;" and the authority conferred by the fortieth section of the act to protect the debtor's property, was not intended to refer to the courts of a state nor to its officers. "It does not refer to the courts of a state, or to their executive officers." It was not designed to arrest the whole machinery of another and independent forum, which is exercising its best efforts to marshal the assets of the debtor, and after discharging the legitimate liens to which they are subject, reserving the residue as a fund in bankruptcy;" and I hold that there could not be language more in point to the case at bar than this language. Again, he says: "When the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it have once attached, that right cannot be arrested or taken away by proceedings in another court; these rules have their foundation, not merely in comity but in necessity." Again, he says: "neither can one take property from the custody of the other by replevin or other process, for this would produce a conflict of jurisdiction extremely embarrassing in the administration of justice." * * * Hence, he says: "That the United States court has no supremacy or power by injunction over the state courts," and he holds "that there is no power in the bankrupt law, limiting the jurisdiction of the state courts, *nor does it confer any power on the bankrupt court to supersede their jurisdiction or wrest property from the custody of their officers;* on the contrary, he says, "in other words, as to the estate or property of the bankrupt, the assignee is *only* subrogated to all his rights and responsibilities. The act (bankrupt act,) sends the assignee to the state courts, and admits its power

over him. It confers no authority on this court (the United States court,) to restrain proceedings therein by injunction or other process, much less to take property out of its custody or possession with a strong hand;" and he finally concludes by saying that we shall, therefore, be compelled to dissolve this and all other injunctions in similar cases. Mr. Justice GRIER fully concurring in the above views. Mr. Justice McCANDLESS holds even stronger language in the *case of William Burns*, a bankrupt, and reported in the same volume. There he holds that if the lien upon the property is fraudulent, or void, its validity must be tested in the state court. So in the case of *Atkinson* agt. *Purdy* (*Crabbe* 556,) Mr. Justice MILLER, of the supreme court of the United States, holds that the true and proper remedy for the assignee is in the state court, where there is a controversy about the insolvent's property; and Mr. Justice LEAVITT, of the same court, held, in the case of *Clarke, assignee, agt. Rist*, cited above, " that the equitable interests of the bankrupt in the property in question did not pass or rest in the assignee, and that the United States court had no power to withdraw the interests of property from final disposition of the state court." In finally disposing of that case the learned Judge said : " When a state tribunal has taken jurisdiction of a case, though having connection with an estate in bankruptcy, it affords no sufficient reason for its withdrawal from that jurisdiction that a federal court might take congnizance over it; and it is proper that the federal courts should cautiously abstain from the unnecessary exertion of powers which may bring them into conflict with the state courts." For, as he properly observes, " nothing can tend to the more serious disturbance of the harmonious action of the state and federal authorities than such conflicts."

In conclusion, I am obliged to adjudge the respondent guilty of a technical contempt of court; but in consideration that he disavows any intentional disrespect of our

Clark agt. Binninger.

authority, and protests his conduct was controlled by the advice of counsel, I will dismiss him with only a nominal punishment.    So much suffices for the vindication of our authority.    I trust the respondent will spare us the necessity of any more severe assertion of that authority.