# N. Y. SUPERIOR COURT.

## ABRAHAM B. CLARK agt. ABRAHAM BINNINGER.

Where an action is commenced in this court between parties to obtain a dissolution of the partnership, &c., and a receiver is appointed by the court, who takes possession of the partnership property and effects, and subsequently proceedings in *bankruptcy* are commenced and a decree of the U. S. district court is obtained declaring the parties (partners) bankrupt, and an assignee in bankruptcy is thereupon duly appointed :

*Held,* that there is no provision in the bankruptcy act which gives any power to the assignee in bankruptcy to take into his possession any property held by the receiver at the time under the laws, or by the authority of one of the states. Nor is there any provision, which in terms or by implication, confers upon the bankruptcy court a power to interfere in behalf of the assignee, in respect to any property held in the state courts.

The property should remain in this court, until under the direction of the court it shall be applied to the payment of the partnership debts. When that shall have been accomplished, and a suitable provision made for the costs, expenses and fees of the parties, and of the receiver, any balance there may remain will be paid to the assignee in bankruptcy.

In the mean time, as among the rights of the assignee, he is to be allowed to take upon himself the conduct of the action pending in this court. He may, therefore, continue the prosecution of the action in this court, and may, from time to time, as he shall be advised, make such applications to this court, in this action, as may be necessary for its determination. To that extent, but no further, the assignee in bankruptcy is substituted in the place of the parties.

*Special term, April,* 1870.

THIS is a motion founded on the petition of John S. Beecher, as assignee in bankruptcy of the parties to this action.

The petition alleged that the action was commenced in this court in November, 1869, to obtain a dissolution of the partnership composed of the plaintiff and defendant under the firm name of A. Binninger & Co., the payment of the partnership debts, and a division of any remaining proceeds of the partnership property, between the parties, according

to their respective rights. That subsequently two joint receivers of the partnership property and effects, were appointed by the court in the action, who took possession of such property and effects. That afterwards, and in December of the same year, creditors of the said firm, proceeded under the act of congress, of March 2, 1867, entitled, "an act to establish a uniform system of bankruptcy throughout the United States," to have the said parties adjudged bankrupts. That subsequently, by the decree of the district court of the United States, for the southern district of New York, the said parties were adjudged bankrupts, and the petitioner duly appointed assignee in bankruptcy, and the property of the bankrupts was in due form transferred to him as prescribed in the act. That by a subsequent order made by the said district court, the parties were enjoined from further prosecuting this action, and the assignee in bankruptcy was authorized to apply to this court for such orders and relief in the premises, as he might be advised.

The petitioner thereupon prayed, that this action might be declared by this court to be abated, and that the same might be discontinued, and that the said receivers be directed to deliver to the petitioner, as such assignee in bankruptcy, the property and effects of such partnership, to be administered under the provisions of the bankrupt act.

F. N. BANGS, *for the petitioner.*
G. N. TITUS, *for the defendant.*
R. A. PRYOR, *for the receivers.*

The plaintiff did not appear, being restrained by the order of the district court.

MONELL, J.—The question, in which in this case is involved the duty as well as the power of this court to order, what must in effect terminate the action, by directing the receivers to deliver to the assignee in bankruptcy the

property and effects which came into their hands, to be administered by such assignee in the bankruptcy court, has not, as I believe, been adjudicated upon by any court. It must, therefore, be examined as an original and undecided question, requiring a construction of the bankruptcy act, and its effect upon suits and proceedings pending in state courts.

The validity of the bankruptcy act is not an open question, and the very clearly expressed terms of some of its provisions leave, I think, no room for doubt, that a duly appointed assignee in bankruptcy becomes *instanter* subrogated and substituted to all the rights and possessed of all the estate of the bankrupt, and is entitled to have the control of, and to exercise the authority over it, under the provisions of the act, that is necessary to make it available for the purposes of the bankruptcy proceedings.

Such right of subrogation and substitution, necessarily carries with it all tangible or corporeal property, as well as all incorporeal interests, and embraces all choses and rights in action, and all suits and proceedings pending in any court, in which the bankrupt is a party, and confers the requisite power upon the assignee to continue any prosecution or defense, which may be for the interest of the trust he is to execute. So that, whether in such suits or proceedings the bankrupt is the actor or defender, the assignee is entitled to take into his own hands the further management of the controversies.

But the bankruptcy act goes no further than to absolutely vest in the assignee, the rights, interests and estate of the bankrupt, as they existed at the time of the decree in bankruptcy and of his appointment. There is no doubt, therefore, that under the authority of his appointment, and the formal transfer to him, an assignee in bankruptcy, may take and hold possession of such of the bankrupt's property as may, at the time, be in the bankrupt's possession, or subject to his control, and the delivery of such property to the assignee may be compelled by the bankruptcy court. But there is

no provision in the bankruptcy act which give any power
to the assignee, to take into his possession any property
which is held at the time under the laws, or by authority
of one of the states.   Nor is there any provision, which in
terms, or by implication, confers upon the bankruptcy court
a power to interfere in behalf of the assignees in respect to
any property held in the state courts.   And although the
assignee is substituted to the rights of the bankrupt, in
regaid to all suits and controversies pending at the time of
the decree in bankruptcy, there is no provision which
authorizes the assignee, or empowers the bankruptcy court
to authorize the assignee to prosecute or defend such suits
or controversies.   The act does nothing more than to trans-
fer the right, title, interest, and estate of the bankrupt to
the assignee, thus giving him a *status* as the successor in
interest of the bankrupt to apply to the state court, where
such suits are pending, for such proper and adequate relief
as he may be entitled to.

It was because of the absence of any such provision in
the bankruptcy act, and consequently of any such power
in the bankruptcy court, that led to the several decisions
in the federal courts to which I was referred on the argu-
ment, and which deny that any such power exists in such
courts; and the decision of the learned district judge of this
district in the matter of these bankrupts, upon the applica-
tion of the assignee for an order requiring the receivers to
transfer the property to him, was, as I understand it, placed
upon the want of power in that court; and, therefore, that
it could not oust the state court of any possession of, or
control over, the bankrupt's property, which it had acquired
prior to the decree in bankruptcy.

In the case of *Peck* agt. *Jenness* (7 *How. U. S.*, 612,)
an attachment which had been levied under a state court,
was held not to be superseded by the subsequent bankruptcy
of the debtor.

In *Clark's Assignee* agt. *Reit*, (3 *McLean*, 494,) a creditor

had obtained a lien through a creditor's bill, previous to the bankruptcy of the debtor, and the federal court refused to interfere. LEAVITT, J., in that case says, "when a state tribunal has rightfully taken jurisdiction of a case, though having some connection with an estate in bankruptcy, it affords no sufficient reason for its withdrawal from that jurisdiction, that a federal court might have taken cognizance of it."

In the *Matter of Arledge*, (1 *Bank. Rep.*, 195,) it was held, that the possession of an assignee, under a voluntary assignment, could not be disturbed by a subsequently appointed assignee in bankruptcy. A similar decision was made in *Sedgwick, Assignee*, agt. *Place*, (*Id.*, 204,) where Judge NELSON says, "we find nothing in the provisions of the law that would authorize us to take this property out of the hands of the assignee, under the state law, and turn it over to the assignee in bankruptcy." And in the cotemporaneous case of the same *Assignee* agt. *Minc*, (*Id.*,) the same learned justice, in sustaining the possession of a *receiver*, appointed by a state court in a creditor's suit, says, "the question involving the right to this property is in the state court, *where it properly belongs;* and the decision of that court will be conclusive upon the right." Some of these decisions, and many others which might be referred to, were made, it is true, under a former bankruptcy act, the provisions of which were not altogether similar to those of the act of 1867. The former act declared that nothing therein should be construed to annul, destroy, or impair any liens previously acquired. I do not find such a provision in the present act, but I do find that all attachments issued against the debtor's property, within four months of the proceedings in bankruptcy, shall be dissolved. No greater effect, however, can be given to that provision than is imported by its words, and, as it is of at least very doubtful validity, it cannot be extended so as to confer any other or further power upon the federal courts.

In the present act there is the same absence of any express power as there was in the former statute, under which some of the decisions referred to were made. These decisions, therefore, are applicable to the questions of power under the present statute, and are conclusive upon the question.

But none of the decisions, whether under the former or the present statute, reach, and therefore, do not aid me in determining the question raised upon this motion, which involves, not the power of the federal courts, but the power and duty of this court, upon the application of the assignee in bankruptcy, asking to be put into possession of the bankrupt's estate, now held by the officers of this court.

The validity of the decree in bankruptcy cannot be properly questioned. It must be assumed that the district court had jurisdiction and power to declare the parties bankrupt; and that the proceedings for the appointment of the assignee were competent and regular. We must, therefore, give to the decree such force and effect as under the bankrupt act it is entitled to receive. The motive which led to the institution of the bankruptcy proceeding, if it was an improper one, cannot be regarded by this, and probably was not, by the district court. Nor can we now inquire into the propriety of creditors going into the federal courts to obtain remedies which this court was competent to, and could furnish to them in this action. We cannot deny their right to do so, but we can and do seriously question the propriety of allowing any interference by the federal courts, or by the assignees whom they have created, with the jurisdiction or powers of this court, or with the rights of parties litigating in it. More especially ought we to question such a proceeding when such interference will, if allowed, turn those parties, over whose persons and property we have obtained control, not only out of the court, which they had selected for the settlement of their partnership concerns, but

into another and different tribunal which neither of them has sought.

This being an action, the primary object of which is, to obtain a dissolution of a co-partnership, this court is competent to administer the partnership effects according to principles of equity; and after deducting payment of the partnership debts, make a just distribution of any surplus among the parties, and the bankruptcy court can do no more. Having, therefore, obtained possession of the case, with ample power to wind up the partnership, according to established principles, it was the assertion of a mere naked right, without even a pretended fitness for it, that the creditors went into the bankruptcy court, and asked to have declared bankrupts, a mercantile firm of unquestioned solvency, who had done a merely technical act of bankruptcy.

The question in this case, however, is somewhat complicated by the nature of the controversy. Both are parties to the action, one against the other, so that the right, which would exist in another case, of substitution, cannot be said to exist in this case. The assignee cannot properly or formally be substituted in the place of the plaintiff to prosecute, and also in the place of the defendant to defend. The relief, therefore, which he demands would, if granted, in effect, turn over the action to the bankruptcy court, by removing the *subject* of it out of the dominion of this court and into the custody of the assignee in bankruptcy.

The 14th section of the bankrupt act provides, that upon the appointment of the assignee the judge or register shall *convey* to the assignee all the property and estate of the bankrupt, "*and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in such assignee.*"

Not only are the terms "real and personal estate," sufficiently comprehensive to include every species of property, and, therefore, embrace choses and rights in action, but

such latter species of property is *expressly* included, and all power over it is at once vested in the assignee.

The provisions referred to, are very clear, and transfer absolutely to, and vest in, the assignee the whole estate of the bankrupt, and so absolute and perfect is the transfer, that the *bankrupt* is divested of all title and deprived of all right of possession.

The transfer made to the assignee in this case, therefore, vested in him all the title of the parties to this action, to any property held or owned by them as partners, and necessarily included all *their* title to the property which had previously come into the possession and custody of the officers of this court.

Such is not only the declared effect of the act, but it must have been the intention of congress, that in all cases, at least of involuntary bankruptcy, the bankruptcy court should have the exclusive power to administer the bankrupt's estate (subject to such liens as had been previously acquired by the state courts), so far as such property could be reached by the federal courts.

It is, therefore, very clear, I think, that the right of the assignee in bankruptcy can extend no further, and that he cannot claim the delivery to him of any property of the bankrupt, which is held adversely, or under liens acquired in the state courts. The *title* to all such property becomes vested in the assignee, only to the extent of the title of the bankrupt, which is subordinated to the control which the state court has over it.

Congress did not, in my judgment, intend to usurp the authority of the state courts. Had such been the design, it would have been expressed in clear terms, and not left to be implied, It did declare that certain attachments should be dissolved, but ventured to encroach no farther upon constitutional rights, or to destroy previously acquired liens. The jurisdiction of the federal courts is exclusive only when it does not conflict with rights secured under state laws.

A mere grant of jurisdiction is not to be construed as exclusive (*Delafield* agt. *State of Illinois*, 26 *Wend.* 193), and can be made so only by express terms; and to have the effect of divesting a state court of its primitive jurisdiction or pre-existing authority, the statute must be direct and exclusive, and the exercise by the state courts expressly prohibited.

Congress, doubtless, felt the importance of avoiding all possibility of conflict of jurisdiction or power, which might arise between the state and federal courts, and omitted to furnish any ground for it, except in the *questionable* case of attachments. The federal courts have uniformly held, as we have seen, that they could not interfere, and each tribunal is left, independently of the other, to employ its functions. And it is proper, as was said by Mr. Justice Leavitt, in *Clark's assignee* agt. *Reit, (ubi sup.)*, that the federal courts should cautiously abstain from the unnecessary extension of powers, which might bring them into conflict with the state courts.

We cannot, with propriety or justice, yield up our jurisdiction in this case to the federal court, by relinquishing our control over the subject of the litigation. We had acquired such control before the bankruptcy court had possessed itself of any jurisdiction whatever; and we have ample power to administer the estate of the partnership, which is the estate of the bankrupts, in the same manner, upon the same principles, and to the same ends that it would be administered if it were in the bankruptcy court.

My conclusion is, that there is no reason for surrendering the property in this case to the assignee in bankruptcy and that it should remain in this court until, under the direction of the court, it shall be applied to the payment of the partnership debt. When that shall have been accomplished, and suitable provision made for the costs, expenses, and fees of the parties and of the receiver, any balance there may remain will be paid to the assignee in bankruptcy.

Clark agt. Binninger.

In the mean time, as among the rights of the assignee, he is to be allowed to take upon himself the conduct of the action pending in this court. He has, as we have seen, been subrogated to all the rights of the bankrupts, but such subrogation is, nevertheless, subject to the power and control of this court over the action. He may, therefore, continue the prosecution of the action in this court, and may from time to time, as he shall be advised, make such applications to this court, in this action, as may be necessary for its determination.

To that extent, but no further, the assignee in bankruptcy is substituted in the place of the parties.

The motion for an order requiring the receiver to deliver the property to the assignee in bankruptcy, must be denied.