## Case No. 9,098.

### MARKSON et al. v. HEANEY.

[1 Dill. 497;[1] 4 N. B. R. 510 (Quarto, 165); 3 Chi. Leg. News, 153.]

Circuit Court, D. Minnesota. Feb. 6, 1871.

BANKRUPTCY—JURISDICTION OF STATE AND FEDERAL COURTS.

1. A debtor residing in Kansas was adjudged a bankrupt on the petition of creditors, by the United States district court for Kansas, and assignees appointed. After the bankruptcy proceedings were instituted, a mortgage creditor commenced suit to foreclose in one of the state courts of Indiana without permission of the bankrupt court, making the assignees defendants. The mortgagee was a resident and a citizen of Minnesota. The assignees in bankruptcy filed a bill in the circuit court of the United States for the district of Minnesota against the mortgagee, charging that the mortgage was fraudulent both in fact and under the bankrupt law, and asking a decree to have it declared void, and for an injunction to restrain the defendant from further prosecuting his foreclosure suit in Indiana. Held, 1. That the district court in which the bankruptcy proceedings are pending, or the circuit court for that district, can, in cases

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

where the suit in the state court is commenced after the proceedings in bankruptcy are instituted, enjoin the plaintiff therein from further prosecuting the same. Held, 2. That in this case the circuit court for the Minnesota district had no bankruptcy jurisdiction, and could exercise only its ordinary equity powers, and for this reason the injunction asked for was refused.

[Cited in Sherman v. Bingham, Case No. 12,733; Jobbins v. Montague, Id. 7,330; Re Stansell, Id. 13,293; Paine v. Caldwell, Id. 10,674. Criticised in Goodall v. Tuttle, Id. 5,533. Cited in Re Brinkman, Id. 1,884. Followed in Lamb v. Damron, Id. 8,014. Cited in Re California Pac. R. Co., Id. 2,315; Re Sabin, Id. 12,195.]

2. Whether in such a case the assignee may not, by an application to the bankrupt court, be authorized to sell the mortgaged property free of incumbrance, substitute the proceeds in the place of the property, giving the mortgagee notice wherever residing, and whether process in bankruptcy can, when necessary to exercise powers conferred by the bankrupt act [of 1867 (14 Stat. 517)], be rightfully served on parties interested outside of the district in which the bankruptcy proceedings are pending, are questions discussed, but left open.

[Cited in Re Rhodes, Case No. 11,746; Sutherland v. Lake Superior Ship Canal Railroad & Iron Co., Id. 13,643.]

3. Powers of bankrupt courts and of the circuit courts, and the purpose of congress in establishing bankruptcy tribunals, considered.

4. Petition for a review of a subsequent order of sale made by the district court, and steps taken thereunder, see note at foot of the opinion.

[Cited in Re Sacchi, Case No. 12,201; Re Rhodes, Id. 11,746.]

This is a bill in equity filed in the circuit court of the United States for the district of Minnesota, praying for an injunction, and relief. The plaintiffs [Herman Markson and Hugh M. Spaulding] are assignees in bankruptcy of one Antipas Thomas, and bring this bill in that capacity, alleging themselves to be citizens of the state of Kansas. The defendant [Daniel Heaney] is alleged to be a citizen of Minnesota, which is admitted in the answer to be true, and he was served in that state with process issued upon the bill. From the bill, answer, and exhibits, the following facts appear: On the 16th day of December, 1869, Antipas Thomas was, by the district court of the United States for the district of Kansas (of which he was a resident), adjudged a bankrupt, upon the petition of creditors filed on the 3d day of that month. In May, 1870, the plaintiffs were duly appointed assignees in bankruptcy of Thomas, and a deed of assignment has been made to them of all the property and estate of the bankrupt, save such as the law exempts. The bill alleges, and the answer admits that, prior to the commencement of the bankruptcy proceedings against Thomas, to wit: on the 25th day of October, 1869, he, the said Thomas, executed a promissory note to the defendant, Daniel Heaney, for the sum of $26,500, and at the same time executed to secure it a mortgage upon lands belonging to him and situate in Kosciusko county, Indiana. The bill charges that this mortgage is fraudulent, 1. Because there was only a

real debt due from Thomas to Heaney of $4,000, and because it was made to hinder, delay, and defraud creditors. 2. Because it was made in violation of the bankrupt act, since Thomas was insolvent, and Heaney, when he received the mortgage, knew, or had reasonable cause to believe, that Thomas was insolvent, and that the mortgage was made in fraud of the provisions of the bankrupt act. It may here be observed that the answer of the defendant in effect denies these charges of fraud. The bill avers, and the answer admits, that after the proceedings in bankruptcy were commenced, and after the date of the plaintiffs' appointment as assignees, to-wit: On the 14th day of September, 1870, the defendant, Heaney, commenced in the circuit court of the state of Indiana for the county of Kosciusko (where the mortgaged lands are situate) a bill to foreclose the above mentioned mortgage, making as defendants thereto, not only the said Thomas, but the present plaintiffs (the assignees in bankruptcy of his estate.) The bill alleges that on the 19th day of November, 1870, the plaintiffs filed a bill in the circuit court of the United States for the district of Indiana, against the defendant. setting up in substance, the same facts as in the present bill. and praying the same relief, and an injunction against further steps by the defendant in his foreclosure proceeding in the state court, but the defendant not being a citizen of, or found in, the district of Indiana could not be served, and the bill was consequently dismissed. It appears from the pleadings that in the foreclosure suit in Indiana, the present plaintiffs (being made defendants thereto), were notified of its pendency by publication, pursuant to the law and the practice of the state courts; and that at the next term, to-wit, on the 29th day of November, 1870. the assignees appeared in the said state court and setting up the said adjudication of the mortgagor as a bankrupt, and their appointment as his assignees by the United States district court for Kansas, pleaded to the jurisdiction of the state court, which plea was decided to be insufficient. and exceptions taken. Afterwards, on the 1st day of December, 1870, the plaintiffs filed an answer setting up against the mortgage, in effect, the same matters pleaded in the present bill, to-wit, that it is both fraudulent in fact, and under the bankrupt law. Afterwards, on the application of the present plaintiffs. a change of venue was ordered to the circuit court of the state for the county of Steuben, in which court the cause is now pending, and stands for trial at an early day. The bill prays that on the final hearing the mortgage may be declared void, and meanwhile that a writ of injunction issue to restrain the defendant from proceeding further in prosecution of his foreclosure suit in the state court in Indiana, or from taking or obtaining judgment against the said Thomas on the note, and for general relief. The bill

was presented to the circuit judge at his chambers, January 7, 1871, for the allowance of the temporary injunction therein prayed for, and he directed notice to be given to the defendant, which has been done. The defendant appeared and filed an answer to the bill denying the fraud alleged, and produced, on the hearing of the motion for an injunction, certain affidavits showing the value of the mortgaged estate to be about $41,-000, or about $10,000 or $12,000 more than the sum named in the mortgage, and tending to show that he did not have cause to believe when he received the mortgage that Thomas was insolvent. The plaintiffs produced affidavits and documentary evidence showing that Thomas and one Edwards were bankers in Kansas; that the firm suspended payment in a few days after the mortgage in question was executed; that they were insolvent, and the property mortgaged constitutes a large portion of the available assets of the bankrupt, and also tending to show notice of the insolvency, etc.. on the part of the defendant when he received the mortgage.

Z. E. Britton and Morris Lamprey, for the motion.

Jas. T. Lane and Davison & True, contra.

DILLON, Circuit Judge. The adjudication of bankruptcy was made by the United States district court for the district of Kansas, where the bankrupt resided. The property mortgaged to the defendant is situate in Indiana; and the defendant himself is a citizen of and resides in Minnesota. He has never proved, or offered to prove, his debt in bankruptcy; but after the proceedings in bankruptcy were instituted, and the assignees appointed, and while those proceedings were pending in the bankruptcy court in Kansas, the defendant commenced and is prosecuting in one of the state courts of Indiana a bill to foreclose his mortgage, making the assignees defendants thereto, and constructively serving them by notice of publication, pursuant to the laws of the state. and practice of the state tribunals. The present bill is filed by the assignees, not in the circuit court of the United States for the district of Kansas, but in the circuit court for the district of Minnesota, and the suit was thus commenced because service of process could not be had upon the defendant in the former district. A similar suit was brought by the assignees in the United States circuit court for Indiana; but because the defendant could not be there served it was withdrawn.

The bill charges that the mortgage made by the bankrupt to the defendant. a few days before the former suspended payment, and which the latter is seeking to have foreclosed in the state court in Indiana, is both fraudulent in fact and under the bankrupt act; and it seeks a decree to have it so adjudged, and meanwhile asks for a writ of

injunction to restrain the defendant from the further prosecution of the foreclosure suit. The case is now before me on the application for the injunction. In support of the application, it is argued by the counsel for the assignees that the bankruptcy court in Kansas, in which the proceedings in bankruptcy were commenced and are pending, has exclusive jurisdiction over the estate of the bankrupt wherever situate, and over the claims of creditors, secured and unsecured, wherever residing; that the assignees are officers of the bankruptcy court; that since the adjudication in bankruptcy was had before the defendant commenced his suit to foreclose, it follows that the bankrupt court first acquired jurisdiction, and if so, it could not be interfered with by proceedings in any other court, and if such proceedings be commenced, the federal courts not only have the power, but it is their duty to enjoin litigants in the state courts, whenever necessary, to give full effect to the bankrupt act.

On the other hand, the defendant's counsel argue that a mortgage creditor is not bound to, nor can he be compelled to prove up his claim in the bankrupt court; that the only effect of not proving it up is that he waives or loses all right to share in dividends in respect to any balance of his debt which the mortgaged estate may prove insufficient to pay; that such a creditor, notwithstanding the mortgagor shall have been adjudged a bankrupt, may rightfully file his bill in any state court, having jurisdiction, to foreclose his mortgage; that the defendant did so file his bill in this instance, and that the assignees, having appeared thereto and answered, setting up as a defence the same matters which are made the basis of the present bill, the result is that the state court in Indiana first acquired jurisdiction of the matter in controversy, to-wit, the validity of the mortgage; and if so, then on acknowledged principles of law, no other court can arrest or interfere with the exercise of such jurisdiction.

Section 1 of the bankrupt act constitutes the district courts of the United States courts of bankruptcy, and confers and defines their jurisdiction: "That the several district courts of the United States be, and they are hereby, constituted courts of bankruptcy, and they shall have original jurisdiction in their respective districts, in all matters and proceedings in bankruptcy; and they are hereby authorized to hear and adjudicate upon the same, according to the provisions of this act. * * * And the jurisdiction hereby conferred shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; *to the collection of the assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties; and to the marshaling*

*and disposition of the different funds and assets so as to secure the rights of all parties and due distribution of the assets among all the creditors;* and to all acts, matters, and things to be done under and in·virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy," etc.

The language of this section is taken in part from the sixth section of the bankrupt act of 1841, and the part above, placed in italics, from Judge Story's opinion in Ex parte Christy, 3 How. [44 U. S.] 221, expounding the policy and purpose of that act. I shall again refer to this opinion, after calling attention to the provisions contained in the second section of the bankrupt act of 1867, respecting the jurisdiction and powers of the circuit courts of the United States.

This section, after giving "the several circuit courts of the United States within and for the districts where the proceedings in bankruptcy shall be pending. a general superintendence and jurisdiction," revisory of all cases and questions in the district court arising under the act, adds that, "said circuit courts shall also have concurrent jurisdiction with the district courts of the same district of all suits at law or in equity which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against the assignee, touching any property or rights of property of said bankrupt transferrable to, or vested in, such assignee."

It is not my purpose to recite in detail the various provisions of the bankrupt act; but a review of them would clearly show, as I think, that congress in passing the act, in pursuance of its constitutional power, not only intended to make it uniform, but operative throughout the United States. It does not stop at state lines, and the bankruptcy tribunal it establishes not only acts independently of state tribunals, but it would be destructive of the system itself to permit suitors by resorting to state tribunals to withdraw, against the will of the bankruptcy court, property or cases which belong to its jurisdiction.

Property, wherever situate, which is not exempted from the operation of the act, passes to the assignee, who is an officer of the bankrupt court, and thus is in the custody or under the control of that court. This is equally true of property under mortgage as of that which is unincumbered. See sections 14, 20, 22, 25. Debts, whenever payable, and creditors wherever residing in the United States, are within the operation of the act. The bankrupt court is invested with this jurisdiction over the bankrupt and his estate, and over creditors who are brought involuntarily into it, in order to administer the estate for the benefit of all the creditors according to their respective rights. The priorities of bona fide mortgagees and lien holders are protected by the bankrupt act, and will

be respected by the bankrupt court in the final settlement and distribution of the estate. "By operation of law, the deed to the assignee conveys to him all the estate, real and personal of the bankrupt" (section 14), and "the assignee has authority, under the order and direction of the court, to redeem or discharge any mortgage, * * * real or personal, whenever payable, or to sell the property subject to such mortgage" (section 14). And see sections 15, 20, 22, 25.

Thus, it is plain beyond controversy, that the property of the bankrupt, though situate, as in this case, in another state, and although mortgaged by the bankrupt prior to the institution of proceedings in bankruptcy against him, is within the jurisdiction and under the control of the bankrupt court in Kansas. I think that to be an erroneous construction of the bankrupt act, which holds under the somewhat inapt phraseology of section 20, that mortgage creditors have absolutely the election to stand outside of the operation of the bankrupt act. Their debts are required to be scheduled, and the mortgaged estate to be inventoried by the bankrupt (section 11); the title thereto passes to the assignee, subject to the mortgage, and the assignee may sell, sue for, and manage the property (section 14); the debt of the mortgagee is provable, and such proof does not waive the lien (sections 19, 20, 22); the assignee may redeem the mortgage debt, or sell the equity of redemption vested in him (Id.); and it follows from these various provisions that the assignee has a right to call the mortgage creditor into the bankruptcy court, or into the proper circuit court, and test the validity of his mortgage or the amount due thereon. Ex parte Christy, 3 How. [44 U. S.] 221, and cases cited, infra.

It is not necessary in this case to say that the mortgage creditor is bound at all events to go into the bankrupt court and prove his debt, or ask to foreclose, or to have the property sold and his debt paid from the proceeds. See In re Davis [Case No. 3,618]; Foster v. Ames [Id. 4,965].

It is clear that the assignee has at all events the right to bring the mortgage creditor into the court of bankruptcy (unless he prefers to file a bill in equity in the proper circuit court), and contest the amount of his debt and the validity of his mortgage, and to have the court make such equitable orders as to the disposition of the property as seem best.

The powers to "ascertain and liquidate liens" on the property of the bankrupt, "to adjust the various priorities and conflicting interests of all parties, and to marshal and dispose of the different funds and assets," and the other express powers of disposition and sale of property, confer upon the bankrupt court the right of control over mortgaged estates and the mortgagees, and by implication give the right to prevent its control from being taken away by the resort on the part of the creditor to other tribunals against the will of the bankrupt court.

This view of the law is sustained by the opinion of Mr. Justice Nelson, in the case of the Kerosene Oil Co. [Cases Nos. 7,725 and 7,726]. In that case the oil company were adjudged bankrupts on the 16th day of June, 1868. The New York Guaranty and Indemnity Company held a mortgage on the realty of the oil company, and on the 10th day of October, 1868 (after the adjudication in bankruptcy), commenced a foreclosure suit in the state court. A bill was filed by the assignee in the bankruptcy court alleging the invalidity of the mortgage, and praying that it be declared void, the property sold, and the proceeds brought into court and disposed of, according to the rights of the several parties, and for an injunction enjoining the Guaranty and Indemnity Company from taking any further proceedings in the foreclosure suit. The injunction was granted by the district court, and on review this action was sustained by Mr. Justice Nelson, who directly affirmed the jurisdiction of the district court to entertain such a bill and grant such relief, and asserted a concurrent jurisdiction in the circuit court of the same district.

The right in a proper case to enjoin proceedings in state courts which contravene the bankrupt act, is declared by the circuit court of the United States, in the case of Irving v. Hughes [Case No. 7,076], heard before Grier and Cadwallader, JJ. The court says: "The state court cannot be enjoined, but the litigants in it may be restrained from doing what would frustrate, or directly impede, the jurisdiction expressly conferred by the bankrupt act." And it is the opinion of Chase, C. J., that after the bankruptcy, liens must be enforced under the superintendence of the national tribunals. In re Wynne [Id. 18,117]. A similar view of the bankrupt act of 1841 [5 Stat. 440] was taken by Mr. Justice Story, in Ex parte Christy, 3 How. [44 U. S.] 221. "Its success was dependent upon the national machinery being made adequate to all the exigencies of the act. Prompt and ready action without heavy charges and expenses, could be safely relied on where the jurisdiction was confided to a single court in the collection of assets, in the ascertainment and liquidation of liens, and other specific claims thereon; in adjusting the various priorities and conflicting interests; in marshaling the different funds and assets; in directing sales at such time and in such manner as should best subserve the interests of all concerned; in preventing, by injunction, or otherwise, any particular creditor from obtaining an unjust and inequitable preference over the general creditors by an improper use of his rights and remedies in the state tribunals, and finally in making a due distribution of the assets, and bringing to a close within a

reasonable time, the whole proceedings in bankruptcy."

This language was quoted and approved by Justice Swayne, as applicable to the present bankrupt act (Bill v. Beckwith [Case No. 1,406]), and by Durell, J. (In re Barrow [Id. 1,057]). If the present bill had been filed in the circuit court for the district of Kansas, and service could have been had on the defendant in that district, I should for the reasons above stated, feel quite clear that I would have the power to award the writ of injunction against the defendant, and that under the circumstances it would be my duty to do so. But this bill is filed in the circuit court for the Minnesota district, and was so filed because the defendant resided in that district, and could be served with process therein, and it proceeds upon the assumption that the federal courts in Kansas by reason of the inability to serve the defendant therein, would be unable to take jurisdiction of the suit, had it been there instituted.

I am inclined to the opinion that the circuit court for the Minnesota district has no jurisdiction over this controversy conferred upon it by the bankrupt act; and that whatever powers it has and can exercise in the present case will be in virtue of its ordinary equity jurisdiction.

By recurring to the first section of the bankrupt act, it will be seen that the "several district courts are constituted courts of bankruptcy with original jurisdiction in their respective districts in all matters and proceedings in bankruptcy." The powers which this section confers upon district courts are limited to cases of bankruptcy pending therein, as was very properly held by Mr. District Judge Blatchford in Re Richardson [Case No. 11,774]. In that case the petitioners had been adjudged bankrupts in Louisiana, and applied to the United States district court for the Southern district of New York for an injunction to restrain certain creditors from prosecuting a suit against them in the state courts of New York. It was denied for want of jurisdiction. the judge alluding to, but expressing no opinion upon, the question, whether the circuit court for the New York district, under its general equity powers, or the bankrupt court, or circuit court of Louisiana could, without further legislation, give relief. The provision of the bankrupt act as to the jurisdiction of the circuit courts is that, "the several circuit courts of the United States within and for the districts where the proceedings in bankruptcy shall be pending, shall have concurrent jurisdiction with the district courts of the same district of all suits," etc. Under this provision the circuit court of Minnesota has no bankruptcy jurisdiction in the present case, since the bankruptcy proceedings are pending in the district of Kansas. It can only exercise its ordinary equity powers, and I think it cannot be claimed, aside from its jurisdiction in bankruptcy. that a court of the United States would be warranted in enjoin-

ing a foreclosure proceeding in the state court. A state court of equity in Minnesota would scarcely look with favor on an application, because the defendant resided there, to stay him from prosecuting a foreclosure suit in another state, but would leave the parties in the court which had, or was asserting, jurisdiction over them. If the bankrupt act confers no bankrupt powers with respect to the case on the circuit court for the district of Minnesota, it seems to me that it can only award an injunction on the same principle that would apply were the application made to a chancellor in the state tribunals. This point as to the jurisdiction of the Minnesota circuit court has not been prosecuted by counsel, and I therefore express only my first impressions concerning it.

Since I refuse for the present, the injunction on this ground alone, I will allow the counsel to be heard upon it if they think my impressions erroneous. In this view of the case, it is unnecessary to give any decided opinion respecting the question, whether on a similar bill filed in the circuit court for the district of Kansas, service can rightfully be made on the defendant without the limits of the district. Under the judiciary act which limits the powers of the federal courts to their respective districts, service within the district, or a voluntary appearance, is necessary to jurisdiction. If this limitation obtains in all suits and proceedings arising under the bankrupt act, it certainly will fail in many instances without further legislation, to meet the exigencies of particular cases, or to enable the courts to carry into effect the provisions of the statute. The power to bring creditors outside of the district within the operation of the bankruptcy court is often necessary to the exercise of the jurisdiction and powers conferred by the act; but at present, I refrain from giving any opinion upon the right to serve bankruptcy process. or process in bankruptcy suits, beyond the limits of the district in which the bankruptcy proceeding is pending.

The question may be presented on an application by the assignees to the bankrupt court, to sell the mortgaged estate free of incumbrance, substituting the proceeds in the place of the property sold. See Bankrupt Act, § 25; Foster v. Ames [Case No. 4,965]; Bill v. Beckwith [supra]; In re Barrow [supra]. If this section applies to such a case as the present, the provision is that, "The court may, upon the petition of the assignee after such notice to the claimant, his agent, or attorney, as the court shall deem reasonable, order the property to be sold under the direction of the assignee, who shall hold the funds received in the place of the estate disposed of;" not, in terms, at least, limiting the notice to claimants residing in this district. Or the question may be presented by a bill like the present, filed in the circuit court for the district of Kansas, to impeach the mortgage, and asking for an injunction against further proceeding

by the defendant in his foreclosure suit in Indiana. But until it arises in such a shape as to require disposition, and has been fully argued, it will be better to decline its examination or discussion. The injunction is refused, but the bill may be retained for final disposition, or dismissed, as the plaintiff's counsel may be advised. **Injunction denied.**

NOTE. After the foregoing opinion was delivered, the foreclosure suit proceeded in the state court of Indiana, and that court rendered a decree in favor of Heaney for the full amount of his mortgage, from which the assignees took an appeal to the supreme court of the state, which is yet pending,—the assignees throughout resisting and objecting to the foreclosure proceedings in the state court, on the ground of the alleged exclusive jurisdiction of the bankrupt court. After the foreclosure decree was entered, the assignees filed their petition in the district court of the United States for the district of Kansas, under the 25th section of the bankrupt act, stating, in substance, that the existence of the Heaney mortgage, that it was fraudulent both in fact and under the bankrupt act; that Heaney resided in Minnesota, and asking an order to sell the real estate free of the mortgage, and have the proceeds substituted in the place thereof. Notice of this application was served upon Heaney by the marshal of Minnesota in that state, and he appeared in the bankrupt court in Kansas, and filed an answer denying the fraud alleged against him, and pleaded the proceedings and decree in Indiana to estop the assignees to re-litigate the question of fraud, that question having been, as he claimed, settled and adjudicated in state court. After hearing both parties the United States district court, on July 12, 1871, entered an order authorizing the assignees to sell the real estate in Indiana free from all liens, including the mortgage of Heaney, at public sale, after notice, and ordering them to bring the proceeds into court to be held in the place of the land, and subject to the further order of the court as to the distribution thereof, all rights of the said Heaney to the proceeds of such sale or any part thereof, being reserved for further hearing. To this order Heaney objected; and the assignees having subsequently thereunder advertised the land for sale, to take place on the 3d day of September, 1871, Heaney filed his petition in the circuit court of the United States for the district of Kansas, under the second section of the bankrupt act, to review the aforementioned order of the district court, authorizing the assignees to sell the land. This petition was presented to the circuit judge in vacation; notice thereof was given to the assignees; the parties appeared before the circuit judge at chambers, August 28, 1871, and after argument it was there held: 1. That the order complained of was one which the circuit court could review or revise under the second section of the bankrupt act. 2. That the circuit judge had power in vacation, at his chambers, though outside of the district of Kansas, to entertain and act upon the petition of review. 3. That under the circumstances, the order of the district court would be modified as follows: The sale of the land by the assignees shall be postponed until the 30th day of October, 1871, but may then take place pursuant to the order of the district court, unless Heaney shall, before September 25, file his claim in that court or exhibit his bill therein or in this court, or institute proper proceedings in the one court or the other, to have settled between him and the assignees the question of the validity of his mortgage and the amount due thereon: this being done no sale shall take place during the pendency of such proceedings, either by the assignees, under the order of the district court, or by Heaney, under his decree.

The circuit judge reiterated the views expressed in the foregoing opinion as to the power and rightful jurisdiction of the federal courts to superintend the enforcement of all claims against the bankrupt after the adjudication of bankruptcy; but expressed no opinion as to the effect of the assignees entering an appearance in the state court, nor upon the question whether the decree therein concluded them from attacking the mortgage for fraud.

As to jurisdiction of state and federal courts: Johnson v. Bishop [Case No. 7,373]; Clark v. Binninger [38 How. Prac. 341], and note; same controversy, In re Bininger [Case No. 1,417]; Sharman v. Howell, 40 Ga. 257; In re Schnepf [Case No. 12,471]; Irving v. Hughes [Id. 7,076].

[For subsequent proceedings in this litigation, see Cases Nos. 6,555 and 9,099.]