# Pool *et al. v.* Ragland's Administrator.

*Bill in Equity to Reach and Condemn Equitable Assets which had been Fraudulently Conveyed.*

1.   *Paramount lien created by bill filed to reach and condemn property; when such lien not disturbed by subsequent bankruptcy of debtor.*—When a bill by a judgment creditor, whose execution has been returned "no property," is filed to reach and condemn equitable assets which have been fraudulently conveyed by the debtor, it creates, if prosecuted to effect, a lien upon the property sought to be condemned, paramount to all subsequently acquired liens and subsequent purchases; and where such bill is filed and summons issued more than six months before the debtor's bankruptcy, the rights and liens acquired by the filing of the bill will not be disturbed by the bankruptcy, and are paramount to those of the assignee.

2.   *Conduct of assignee indicating that he had no claim; when case not reversed, though assignee not made a party.*—In this case the assignee was made a defendant after the filing of the bill, and on his failure to answer, a decree *pro confesso* was taken against him, and complainant, by leave, afterwards dismissed the bill as to him before decree,—*held*, that the conduct of the assignee indicated that he had no claim to the property in controversy, and

.as any claim he could assert would be subordinate to complainant's, which is for a debt greatly in excess of the ascertained value of the property, this court would not reverse because assignee was not made a party.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. CHAS. TURNER.

On the 27th of September, 1867, John D. Ragland filed his bill in this suit, in the Chancery Court of Dallas county, .against Anderson J. Pool, Webb Ross, Andrew J. Mullen, and James W. Moore, alleging as follows : *First,* that at the .spring term of the Circuit Court of Perry county, 1866, said Ragland recovered a judgment against said Pool for $48,764.17 ; *second,* that execution was issued on said judgment, placed in the hands of the sheriff of Perry county, .and returned by said sheriff, " no property found "; *third,* that the said Pool had no visible property on which an execution could be levied, and was insolvent ; *fourth,* the record of -the judgment in *Ragland v. Pool* is here set out as a part of the bill ; *fifth,* that said Mullen was the owner of a certain lot described in the bill, on which he made a contract with .said Ross and Moore to erect a livery stable in Selma, by the terms of which agreement said Ross and Moore were to build said stable at their own cost, which being done, Mullen was to convey to them a half interest in the lot, so that Mullen should own a half interest in the lot and stable, and Ross and Moore a fourth interest, each and all as tenants in common ; *sixth,* that Ross and Moore let out the contract to said Mullen, who proceeded to carry out his contract, and, at the time the bill was filed, the stable, though not entirely completed, was up and covered in ; that the amount of money expended in the erection of the stable, and the value of the lot on which it was built, was, to-wit, $20,000 ; *seventh,* that on the 28th June, 1866, at the time said contract was made, the said Ross was, and ever after that remained totally insolvent; *eighth,* that said Ross, when he made said contract, had no interest in it, that he never had any interest whatever in the lot and building, that his connection with said contract was merely nominal, that he had no money to put in the building, and, in fact, never furnished a dollar towards its erection ; *ninth,* that said Pool was the person really interested under said contract, in the place of said Ross ; *tenth,* that said Pool was afraid to make the contract himself with Moore and Mullen, on account of the said judgment of Ragland and other judgments against him, and he therefore entered into an agreement for Ross to do the contracting, and he (Pool) to furnish the money, which was a private

engagement not known even to Moore or Mullen, and was entered into secretly to enable Pool to cover up his property against said Ragland out of the reach of said judgment; *eleventh*, that Pool furnished a large amount of money, stated to be $10,000, which was expended by Ross in putting up said stable, and that Ross paid nothing, that the interest represented by Ross in the lot and buildings was Pool's, not Ross', and the same was subject in equity to the judgment of' *Ragland v. Pool; twelfth*, the bill prays for an ascertainment of Pool's interest in the lot thus fraudulently covered up and represented by Ross, and to have the same condemned and applied towards the payment of Ragland's judgment.

Mullen answered the bill, admitting the contract, setting up the amount and value of the work done by him on the buildings, and propounding his interest in the premises.

Moore answered the bill, and disclaimed all interest in the premises and in the litigation, which answer was filed on the 5th of June, 1868.

At the October term, 1868, a decree, *pro confesso*, was taken against Pool, on personal service. At the April term, 1869, a decree, *pro confesso*, was rendered against Ross on personal service.

At the October term, 1869, the bankruptcy of Pool was suggested.

At the April term, 1871, notice was issued to one John F. Bailey, as assignee of Pool in bankruptcy, to show cause why he should not be made a party, which notice issued and was executed. At rules before the register, the bill was amended (5th June, 1871), making said Bailey, as assignee, a party defendant. A decree, *pro confesso*, was rendered against said Bailey, assignee, before the register, on September 18th, 1871. At the October term, 1871, Ragland dismissed his bill against said Bailey, assignee.

At said last mentioned term, the cause was submitted upon the pleadings and the deposition of Ragland, and the transcript of the judgment attached to the bill as an exhibit.

Pool filed his petition in bankruptcy on the 21st of September, 1867.

Ragland's deposition proved the fraudulent combination between Ross and Pool as alleged in the bill, and that the money with which the stable was built was Pool's money.

At the said October term, 1871, the chancellor rendered a decree that the complainant was entitled to relief against said Pool and Ross, and ordering a reference to the register to ascertain the interest of Pool in the premises, and the

[Pool et al. v. Ragland's Administrator.]

value of the premises, &c. The register, at the same term, executed the reference, on the testimony of A. J. Mullen and other proof, and reported that Mullen was entitled to one-half interest in said premises and to $500 besides; that said Moore had abandoned his contract and interest in the same, leaving Ross in the possession and apparent ownership of the other half interest. The report of the register was duly confirmed, and the cause submitted at said term of the court, on the report of the register, and at the same term the chancellor rendered a final decree, ordering a sale of the property for the payment of Pool's said debt to Ragland. This decree is now assigned as error.

ELMORE & GUNTER, for appellants.—1. It seems to us clear that after the bill was dismissed as to the assignee in bankruptcy of the person whose land was sought to be charged, the chancellor could not proceed to a final decree. *Non constat*, the assignee has sold this very land to the parties now in possession, and they will be turned out under this decree.

2. A final decree will not be made unless all persons whose interests are to be affected by it have been made parties.—1 Brick. Dig. 753, § 1687. The chancellor may notice the defect *ex mero motu*.—*Goodman v. Benham*, 16 Ala. 625.

3. When the party is indispensable the court can not proceed to a final decree, and if it should, the defect will reverse the decree, although the objection is taken for the first time on appeal.—*McMaken v. McMaken*, 18 Ala. 576; *Woodward v. Wood*, 19 *ib*. 213.

4. When the plaintiff has left out necessary parties *wilfully*, or by fraud or bad faith, his bill should be dismissed with prejudice — which is the order asked in this case. 10 Alabama, 703; 4 Paige, 64–76; 1 J. J. Marshall, 76; 3 Bibb, 108; 4 De Sans, 331; 11 Conn. 112; 2 John. Ch. 338; 6 Conn. 422; 8 Ired. Eq. 185.

BROOKS, HARALSON & ROY, *contra*.—1. It is the settled rule of law, that a suit in equity by a creditor to reach equitable assets, gives a lien upon the assets of the debtor in behalf of the creditor, and when the object of the bill is to avoid a fraudulent conveyance of land, the lien thus acquired will not be defeated by a subsequent *bona-fide* sale of the property by the defendant or under an execution on the judgment of another creditor. In such a case the purchaser *pendente lite* will be overreached by the purchase under the

decree, and the chancellor will compel him to surrender the possession.—*Dargan v. Waring et al.* 11 Ala. 994; *Scate v. Coleman,* 5 Monroe, 73; *Le Neve v. Le Neve,* 2 Leading Cases in Eq. Am. Notes, 129; *Carr v. Fearington et al.* 63 N. C. 560.

2. The lien here spoken of attaches from the date of the filing of the bill, and continues until the final orders are taken in the case.—*Carr v. Fearington, supra; Centre v. The P. & M. Bank et. al.* 22 Ala. 757; 2 Sug. on Vendors, 281–285; *Chaudron v. McGehee,* 8 Ala. 570; 9 Dana Rep. 19, 20. And the lien acquired by the filing of the bill is a *specific* lien upon all the estate of the debtor which could properly be reached by a suit in equity.—1 Paige's Rep. 637; 2 *ib.* 567; 10 *ib.* 598; 20 Johns. 534.

3. In the case of *Carr v. Fearington, supra,* the following language is used : " But it is said that the assignee in bankruptcy is not a purchaser, that he comes in by operation of law, and represents all the creditors. We do not see how his coming in by operation of law, exempts him from liability to any equities which would weigh against other assignees. We think the best position in which he can stand is that of a purchaser at an execution sale ; yet, it is clear that such a purchase takes subject to all equities affecting the thing purchased."

In the same case, it is further well said : " The Bankrupt Act expressly protects and reserves, from its scope, liens previously existing, and the assignee can have no right to anything beyond the surplus remaining after payment of the plaintiff's debt, if he has that."

These principles were sustained by Judge BLATCHFORD, of New York, United States District Court, in case of *Sedgwick v. Menck,* 1 B. R. 204, where an injunction was granted by him to restrain an assignee in bankruptcy from prosecuting a suit in the bankrupt court to recover property of the bankrupt, which was subject to a lien arising from the filing of a bill in a State court ; and, on an appeal to the Circuit Court of the United States, Justice NELSON, of the Supreme Court, affirmed the decision of the district judge, remarking : " The filing of the creditor's bill, gave, according to the law of New York, a lien upon the assets of the debtor, in behalf of the judgment creditors. . . . It is difficult to see what right exists in the assignee in bankruptcy to this property thus devoted by the law to the payment of the debts of these judgment creditors. . . . Whether they will derive any benefit from the expense and trouble" (of prosecuting

[Pool et al. v. Ragland's Administrator.]

their suit to a judgment), " must depend on the decision of the appellate court. It seems to me that they are entitled to, at least, this chance, and that the bankrupt's assignee is neither entitled to it himself, nor in a position to deprive them of it. The question involving the right to this property is in the State Court, where it belongs, and the decision of that court will be conclusive of the right," &c.—*Sedgwick v. Menck & Bostwick*, 6 Blatchford Circuit Court Reports, 157.

" When a creditor has acquired a lien by virtue of proceedings, instituted prior to the commencement of proceedings in bankruptcy, to set aside a fraudulent conveyance of the bankrupt, he may continue the suit so as to enforce his lien."—Bump on Bankruptcy, 6 ed. p. 383, citing *Sedgwick v. Menck*, 1 B. R. 204; S. C. 6 Blatchford 156; *Stewart v. Isedore*, 1 B. R. 129; S. C. 5 Abb. (N. S.) 68; *Carr v. Fearington*, 63 N. C. 560. This point, has been decided by our own Supreme Court, in the case of *May v. Courtenay & Tennant*, 47 Ala. 185.

STONE, J.—1. The present suit was commenced, and process of summons served, more than six months before Pool became a bankrupt. The object of the bill was to reach and condemn equitable assets, which had been fraudulently conveyed by Pool. Ragland was a judgment creditor, having had execution returned no property found; and, hence, on that ground alone, he had a right to proceed in equity, to subject equitable property and effects to the payment of his judgment.—Rev. Code, § 3446; 1 Brick. Dig. 655, § 217. When a bill like the present is filed, it has the effect of creating a lien on the property sought to be condemned, which, if prosecuted to effect, is paramount to all subsequently acquired liens, and subsequent purchases. See *Dargan v. Waring*, 11 Ala. 988, 994. And such lien is not destroyed or disturbed by the subsequent bankruptcy of the debtor.—See Bump on Bankruptcy, 9th ed. 528; *id*. 6th ed. 383; *Sedgwick v. Menck*, 6 Blatch. 156; *Carr v. Fearington*, 63 N. C. 560; *Edmuton v. Lyde*, 1 Paige, 637; *Conning v. White*, 2 Paige, 567; *Farnham v. Campbell*, 10 Paige, 598; *Scott v. Coleman*, 5 Monroe, 73; *Newdigate v. Lee*, 9 Dana, 17, 20.

2. In the present case complainant, at one time, amended his bill, and made Pool's assignee a party. He failed to answer within the time required by law, and a decree *pro confesso* was entered up against him. Subsequently com-

plainant, with leave of the court, dismissed his bill as to said assignee, and proceeded to a final decree without having him before the court. We do not know that the assignee sets up any claim to the property in controversy. His conduct would indicate that he does not. But, be this as it may, we are satisfied that any claim he could assert is subordinate to the claim of Ragland, which is for a debt greatly in excess of the ascertained value of the property. Bankruptcy, except as provided by the terms of the statute, does not disturb *bona-fide,* existing liens.

Decree of the chancellor affirmed.